819 So.2d 542 (2001)
Bobby Leonard GRAY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-CP-00749-COA.
Court of Appeals of Mississippi.
December 4, 2001.
Rehearing Denied March 5, 2002.
Certiorari Denied June 13, 2002.
*543 Bobby Leonard Gray, Pro Se.
Office of the Attorney General, by Charles W. Maris, Jr., Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Bobby Leonard Gray was convicted after a jury trial of one count of sale of cocaine. Gray later filed motions for post-conviction relief. On this appeal, he alleges that this second motion should not be barred as being successive since it raises a matter of fundamental right. We agree. We also find that since the court never considered the motion beyond the preliminary procedural point, we do not have the benefit of the court's judgment on the issues raised. We reverse.

STATEMENT OF FACTS
¶ 2. After a two-day trial in July 1998, Bobby Leonard Gray was convicted of sale of cocaine. During jury deliberations, Gray, who was free on bond, fled the jurisdiction after requesting that he be allowed to use the restroom. One week later, Gray was sentenced as an habitual offender to a term of sixty years. Gray was not apprehended by authorities until August 29, 1998, well past the deadline for filing a timely direct appeal. As a result, no direct appeal was filed in this case.
*544 ¶ 3. Gray filed his first motion for post-conviction relief on January 28, 1999. The circuit court denied the motion without an evidentiary hearing on May 10, 1999. Gray filed a notice of appeal but subsequently requested that it be dismissed.
¶ 4. Gray filed a second motion for post-conviction relief on April 13, 2000, alleging that the circuit court had no authority to try him because there had been a "manufactured and forged indictment." Gray argues that no grand jury had been impaneled or convened on January 6, 1998, the day upon which his indictment was returned and filed. On April 20, 2000, the circuit court denied Gray's motion without a hearing, finding it to be successive and thus barred. Gray appeals.

DISCUSSION
¶ 5. A prisoner may file a motion for post-conviction relief if, among other things, a claim is made that the "conviction or the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of Mississippi." Miss.Code Ann. § 99-39-5(1)(a) (Rev. 2000). Most motions for post-conviction relief filed after an original motion for post-conviction relief has been denied are barred for being successive. Miss.Code Ann. § 99-39-23(6) (Rev.2000). However,"[e]rrors affecting fundamental constitutional rights may be excepted from procedural bars which would otherwise prohibit their consideration...." Luckett v. State, 582 So.2d 428, 430 (Miss.1991). The constitutional issue here concerns the indictment.
¶ 6. The Mississippi Constitution states that "[n]o person shall, for any indictable offense, be proceeded against criminally by information...." MISS. CONST. art. III, § 27. There are several exceptions within this constitutional provision, none of which apply here. Gray argues that the indictment was fraudulent, as no grand jury was meeting at the time that this indictment was handed down. Therefore, Gray argues that his conviction and sentence are illegal as he was prosecuted without having been indicted as required by the Mississippi Constitution. State v. Berryhill, 703 So.2d 250, 258 (Miss.1997).
¶ 7. Gray raised his fundamental state constitutional right not to be tried for a felony without being indicted. Therefore, that claim overcomes the successive motion bar. There is still the question of whether enough was presented to justify something beyond summary dismissal.

1. Gray's Evidence of a Manufactured Indictment
¶ 8. The indictment against Gray was signed by the grand jury foreman on January 6, 1998. Gray argues that a variety of evidence reveals that no grand jury met on that day.
¶ 9.(a) A copy of an official record was submitted. It is the allegedly non-existent grand jury's final report, two-pages in length, signed by the grand jury foreman and dated January 7, 1998. It summarizes that the grand jury had been in session for three days, had examined 31 witnesses, returned 178 true bills of indictments, and was ready to be discharged. We take judicial notice that January 7, 1998 was a Wednesday. Thus the grand jury foreman's report suggests that the grand jury likely was meeting on January 6, the date of Gray's allegedly fraudulent indictment. Gray alleged that he would call three witnesses to prove that no grand jury was discharged on January 7, 1998. Instead, these witnesses would testify that a grand jury was impaneled on the seventh or eighth of January and was in session on January 14, 1998. No affidavits from such witnesses were presented.
*545 ¶ 10.(b) Several affidavits were filed from people who state that they were called for "jury duty" on January 5 and January 6, that they were not chosen for a grand jury on either day, and then were dismissed. These witnesses assert that based on these events, they know that no grand jury was impaneled that week nor serving on January 6.
¶ 11.(c) No affidavit from the grand jury foreman was included. Gray did attach an affidavit of Emma Gray who stated that she spoke with the grand jury foreman, that he denied having served on a grand jury in 1998, that he denied signing Gray's indictment, and that he knew nothing of it. That is inconsequential hearsay.
¶ 12.(d) An affidavit from Brandy Edwards was attached that claimed she was working as a confidential informant with the appropriate drug task force, and that she had not purchased narcotics from Gray on the date alleged in his indictment, which was April 16, 1997. She also stated that she was not called to testify before a grand jury about Gray in January 1998. A report of investigation from Bureau of Narcotics Agent Jason Waller is in the record. It states that a confidential informant purchased the drugs from Gray on that date. Brandy Edwards's affidavit further states that she falsely identified Gray at trial as the person from whom she had purchased the drugs.
¶ 13.(e) Several affidavits were filed from people who allege that they were called for grand jury service on January 12 or 13, that each was dismissed without being chosen as a grand juror, and that this indicates that no grand jury met the first week of January 1998 that could have handed down his indictment.
¶ 14.(f) Gray stated that he would call his trial attorney to testify "that the indictment was returned and filed on January 8, 1998," and therefore not on January 6. No affidavit from his trial attorney was included with his motion. What he is relying upon is an invoice from his attorney showing that on January 8, 1998, his attorney billed two hours in regards to Gray's indictment. In addition there is an itemized expense statement containing the same date that the attorney submitted to the circuit court. These only indicate that his attorney performed some service on Gray's behalf regarding the indictment on that date, which likely was a review, research, and investigate function. There is no reason to believe that his attorney was asserting that he appeared on that date before the grand jury, which was two days after the date on the indictment itself.
¶ 15.(g) In his own affidavit, Gray stated that he was arraigned on January 14, 1998, and that the judge could not find an indictment but did find the grand jury capias upon which he was arrested. Gray stated that his trial counsel was appointed the same day.
¶ 16. There are other allegations about the alleged insufficiency of the records to prove that a grand jury was functioning on January 6, 1998. None meaningfully add to the story presented by what we have already described.
¶ 17. Gray stated that the District Attorney's office manufactured the indictment. Gray alleges that the final report of the grand jury was forged "because without a doubt the grand jury was still returning indictments after January 7, 1998." Gray stated that he spoke with most of the thirty-one witnesses who were listed as having appeared before the grand jury on or about January 6, 1998, and that none appeared before the grand jury except Agent Jason Waller. Gray finally stated that he spoke with the grand jury foreman who told him that he did not serve as a grand jury foreman, had not served on a *546 grand jury for at least two years, and that he did not sign any indictments.

2. Effect of Gray's Evidence
¶ 18. The evidence presented by Gray in most respects circles the issue of whether a grand jury actually met. Statements from citizens who were called for jury service and then did not serve on a grand jury are scant evidence of whether others might have been serving. Gray attempts to make these affidavits more useful by also having the affiants swear that they know no one else was selected either. We find, however, that the personal knowledge of people summonsed for jury duty about what else is occurring in the courthouse is too limited to make the affidavits competent evidence on whether a grand jury was meeting at all.
¶ 19. What Gray did not submit is as important as what he provided. There is no affidavit from the grand jury foreman who Gray claims did not serve on a grand jury in January of 1998. No affidavit from his attorney was provided whose actions on January 8 somehow disprove that Gray was indicted on January 6.
¶ 20. Among the more relevant documents submitted by Gray is a letter from the Circuit Clerk of Wayne County. Gray had submitted a request for a variety of documents. The clerk explained that she discovered no order impaneling or dismissing a grand jury for the January 1998 term. The absence of these documents could mean a number of things, including some problems with the state of the records in the county. All orders of courts are to be kept on the minutes. Miss.Code Ann. § 9-1-33 (Rev.2000). The absence of any discovered order could theoretically mean that no grand jury began or ended in the January 1998 term. Whether one had to be impaneled in order to be meeting in January 1998 is a different matter, to which we now turn.
¶ 21. Unless otherwise ordered by the circuit court, a grand jury may be impaneled only twice during a calendar year. Miss.Code Ann. § 13-5-39 (Supp. 2000). Once a grand jury is impaneled, it continues to serve during each successive term of court until a subsequent grand jury is impaneled. Id. There would not need to be an order impaneling a grand jury each new term if one is continuing to serve. Instead, the grand jury is just convened. A grand jury may return an indictment during any term of court but need not do so for each term. Id. The circuit judge appoints a member of the grand jury to serve as foreman. Miss. Code Ann. § 13-5-45 (1972).
¶ 22. We turn to statute to determine whether a grand jury would have been meeting in Wayne County in January 1998. An order establishing the terms of court for each multi-county circuit court district is to be entered annually. Miss. Code Ann. § 9-7-3 (Supp.2000). We do not have in the record a copy of that order, but the Secretary of State publishes annually a "Judiciary Directory & Court Calendar" wherein the terms of court for each of the circuit court districts are listed. We take judicial notice of that record. M.R.E. 201(b). That document indicates that there was a term of court for Wayne County beginning the first Monday in January. The Directory also indicates that January and June are the normal terms for a Wayne County grand jury.
¶ 23. Since a grand jury may usually be impaneled no more than twice during the year, this reference in the Judiciary Directory suggests that a grand jury meeting in Wayne County in a January likely was impaneled that month. The final report of January 7, 1998, indicates that the grand jury only met for three days, which likely *547 but not necessarily were the three consecutive days that ended on Wednesday, January 7. This does not appear to be a grand jury that began in a previous term of court and was reconvened by the circuit court for the January 1998 term.
¶ 24. The only direct evidence of any doubt of the grand jury's meeting was the circuit clerk's inability to provide an order impaneling a grand jury for that term. What cannot be found may be important, but balancing that is the "strong presumption that the official acts of officers are valid." Raper v. State, 317 So.2d 709, 712 (Miss.1975). Consequently, "it is the responsibility of any person challenging the validity of an official, or official act, to show the invalidity by clear proof." Harris v. Harrison County Bd. of Supervisors, 366 So.2d 651, 656 (Miss.1979).
¶ 25. The indictment was dated January 6, 1998, was signed by the grand jury foreman, the district attorney, and one witness. The affidavit attached to the indictment was signed by the grand jury foreman, attested to by the circuit clerk, and file stamped by the circuit clerk. There is a strong presumption that these official acts by these public officers are valid and were executed properly.
¶ 26. We find the issue of whether Gray was entitled to have the State respond at the trial level, and then for the court to determine that the whole matter could be decided short of a hearing, was prematurely resolved by the court. Since the trial judge ruled that this was a successive motion, he never reached the question of whether it plainly appeared on the face of the motion and attached exhibits, together with the prior proceedings in the case, that no relief was justified. Miss.Code Ann. § 99-39-11(2) (Rev.2000).
¶ 27. We admit that most of what Gray provided was indirect and incompetent evidence from individuals temporarily brought into the judicial process by their jury summons. Most of their statements about what was and was not occurring is not based on personal knowledge. However, Gray also showed that no order impaneling a grand jury could be found and no explanation of the significance of that omission appears in the record. Perhaps the trial court is aware of the significance and would find it minimal. Nonetheless, we reverse and remand so that the court can move beyond the successive motion bar. What needs to be addressed is whether the motion presents enough to justify a response from the State and further proceedings under the post-conviction relief statutes. We are not ordering a hearing, but only indicating that on this record we cannot determine the significance of the affidavits and documentary evidence.
¶ 28. This ruling does not suggest that we expect that further trial level review will uncover a practice of issuing indictments without using grand juries. All we are holding is that since we cannot affirm based on the successive motion procedural bar utilized by the trial court, and since this appellate court cannot on this record summarily resolve the matters asserted by the movant and supported by documentation, we are remanding for further proceedings.
¶ 29. We also note that the affidavit from Brandy Edwards claims that she testified at Gray's trial as the confidential informant who had purchased the drugs from Gray, but that in that testimony she perjured herself. Though Gray's motion is directed towards an alleged failure to abide by the constitutional requirement of an indictment by a grand jury, this allegation also raises issues of newly discovered evidence. A prisoner usually files a pro se motion, and Gray did here. *548 Potentially meritorious claims obvious from the motion should "not be lost because inartfully drafted." Ivy v. Merchant, 666 So.2d 445, 449 (Miss.1995). There are precedents that if an affidavit from the sole eyewitness to the crime recants her trial testimony, that this at least entitles the prisoner to an evidentiary hearing. Tobias v. State, 505 So.2d 1014, 1015 (Miss.1987). Edwards may well not have been such an indispensable witness, but we can not determine that from this record. This issue should also be addressed on remand.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.