# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60690

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2018

Lyle W. Cayce
Clerk

JESSICA JAUCH,

   Plaintiff - Appellant

v.

CHOCTAW COUNTY; CLOYD HALFORD, in his Individual Capacity,

   Defendants - Appellees

————————————————

Appeal from the United States District Court
for the Northern District of Mississippi

————————————————

ON PETITION FOR REHEARING EN BANC
(Opinion: October 24, 2017, 874 F.3d 425)

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

REAVLEY, Circuit Judge:

   The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5TH Cir. R. 35), the Petition for Rehearing En Banc is DENIED.

In the en banc poll, six judges voted in favor of rehearing (Judges Jones, Smith, Owen, Southwick, Willett, and Ho) and nine judges voted against rehearing (Chief Judge Stewart and Judges Dennis, Clement, Prado, Elrod, Haynes, Graves, Higginson, and Costa).

ENTERED FOR THE COURT:

_____
THOMAS M. REAVLEY
UNITED STATES CIRCUIT JUDGE

LESLIE H. SOUTHWICK, Circuit Judge, joined by EDITH H. JONES, JERRY E. SMITH, PRISCILLA R. OWEN, DON R. WILLETT, and JAMES C. HO, Circuit Judges, dissenting from denial of rehearing en banc:

I respectfully dissent from our failure to rehear this case en banc. The panel opinion — for the first time in this or any circuit — declared that a sheriff violated the Constitution when an indicted, pretrial detainee was held until the next regular term of the local criminal court before being afforded an opportunity to have bail set. A capias warrant instructed the sheriff to hold her until the term of court, which was when a judge with authority over that prisoner would be in the county. The sheriff did so, following a practice authorized by the state's Supreme Court. There is no law to the contrary that is established with the clarity the United States Supreme Court requires under recent caselaw that was not considered because it postdates the panel opinion.

At its most basic, my concern is that in assessing the liability of the County and the sheriff, the panel opinion used precedents that are inapplicable to the process afforded in this case, a process drawn from statutes, court rules, and perhaps even policies of the local judges. I cannot discern how these defendants had any effect on when this plaintiff was considered for release. Thus, as to these parties, I believe the panel was wrong. More relevant to whether to take a case en banc, what rights prisoners have to be released on bail or otherwise before trial is a profoundly significant question due to its implications for individual liberty. The full court should rework the answer.

I start with a summary of the Mississippi statutes and court rules that led to an allegedly unconstitutional detention. Each of the state's 82 counties is placed into one of 22 districts for circuit courts, the courts handling felony criminal cases. *See* MISS. CODE ANN. §§ 9-7-1 through 9-7-57. Almost all circuit court districts contain multiple counties. *Id.* In multi-county districts,

3

there is not a continuous functioning of the circuit court. Instead, each county's circuit court is to schedule at least two court terms per year, which are set by the circuit judges themselves with notice published annually by the Mississippi Secretary of State. *See* § 9-7-3. Choctaw County is in the Fifth Circuit Court District, consisting of seven counties. § 9-7-19. As shown in the Secretary of State's publication, Choctaw County's two circuit court terms are for three weeks each in February and August. MISSISSIPPI JUDICIARY DIRECTORY AND COURT CALENDAR 35 (2017).[1]

When Jauch was arrested, court rules required an initial appearance within 48 hours of arrest for considering probable cause for the arrest and bail, MISS. UNIF. CIR. & CNTY. CT. R. 6.03, and a later preliminary hearing to examine probable cause and reconsider bail, Rule 6.04. These requirements become moot if a grand jury indicted the individual before the arrest:

> In all cases wherein the defendant shall post bond and is released from custody, or is allowed release on his/her own recognizance, or has been indicted by a grand jury, the defendant shall not be entitled to an initial appearance. A defendant who has been indicted by a grand jury shall not be entitled to a preliminary hearing.

Rule 6.05.[2] The plaintiff, Jessica Jauch, had been indicted before she was arrested. Thus state law directed that neither an initial appearance nor a

---

[1] Though the parties discuss terms of court and their import, any of these details not identified by the parties may be judicially noticed from official state publications. *See R2 Investments LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005). A Mississippi court used its equivalent evidentiary rule to the one we used in *R2 Investments* to take judicial notice of the same publication. *Gray v. State,* 819 So. 2d 542, 546 (Miss. Ct. App. 2001).

[2] The sections in the Uniform Rules that dealt with criminal procedure were removed effective July 1, 2017, revised, and placed into a new Mississippi Rules of Criminal Procedure. MISS. R. CRIM. P. 1.1 (scope). The provisions requiring initial appearances and preliminary hearings continue to exempt prisoners who have been indicted. *See* Rule 5.2(a) (initial appearance) and 6.1(a)(1) (preliminary hearing). Also, a new rule was added which "gives

preliminary hearing needed to be held. There is Mississippi caselaw that the sheriff's office has the responsibility to arrange an initial appearance or preliminary hearing for one of its prisoners. *See Jones v. State*, 841 So. 2d 115, 131–32 (Miss. 2003). Because Jauch had been indicted, though, the sheriff's state-law obligation did not apply to her.

A statute Jauch relies upon, Section 99-3-17, which provides for prompt taking of a prisoner before a magistrate, is the statutory analog to the court rule on initial appearances. The Mississippi Supreme Court has held that the court rules displace any contrary statutes as a matter of separation of powers. *See State v. Delaney,* 52 So. 3d 348, 351 (Miss. 2011). Thus, the statute also is inapplicable because of Jauch's indictment.

The January 24, 2012 capias issued after Jauch's indictment followed those rules. It instructed the sheriff to take into custody and "keep" Jauch so she could be taken to the circuit court of Choctaw County one week later on January 31. It is evident that date was the docket call for the February term of court in the county, at which time she would have been arraigned and bail considered. She was not arrested until April, though. As the County and the sheriff's brief states, because the capias ordering Jauch's arrest was not executed until April 26, she "effectively miss[ed] the February term of court. The next term of court was August[.]" The County and sheriff cited the following statute as support for waiting until the August court term:

> The process for arrest on an indictment shall be a capias, which shall be issued immediately on the return of the indictment into court, and made returnable instanter, unless otherwise ordered by the court, and if the capias be not returned executed, the clerk

---

official sanction to common existing practice" of immediate post-arrest release on personal recognizance or on bond. Rule 5.1 & cmt.

shall issue an alias, returnable to the next term, without an order
for that purpose.

MISS. CODE ANN. § 99-9-1. Thus insofar as a court order, *i.e.*, the capias issued by the circuit court clerk on behalf of the court, directed the defendant sheriff to do anything, that statutorily-revised obligation after Jauch's April arrest was to hold her until the next term of court. The sheriff did so.

Defendants are correct that overlaying Jauch's legal arguments onto the facts of the case leads to this difficulty:

> Appellant's procedural due process argument is about the impact of state law rules of criminal procedure on her detention between execution of the capias and the first day of the next term of court where she formally waived reading of the indictment before a Circuit Court Judge.

Following through to the finish on the facts, the capias along with the cited Section 99-9-1 led to Jauch's being held until the August term, approximately 90 days later. According to a notice given to her on July 16, the circuit court would call the docket on July 31. On August 8, a court order recited that on July 31 Jauch was served a copy of the indictment, was officially appointed counsel, entered a not guilty plea, and obtained release on bond and a trial setting. All charges were dropped soon thereafter.

Caselaw has ratified these procedures. The state court concluded that the potential "grievous harm" to a detainee due to "varying and sometimes lengthy intervals between our counties' terms of court demand that a detainee be accorded the right to a preliminary hearing." *Esparaza v. State*, 595 So. 2d 418, 423 (Miss. 1992). Caselaw also approves that no preliminary hearing is necessary once a grand jury has returned an indictment. *Delaney*, 52 So. 3d at 350 (reaffirming *Mayfield v. State*, 612 So. 2d 1120, 1129 (Miss. 1992)).

Already mentioned, but a reminder and elaboration would be useful, is that by the court rules in effect at the time of *Delaney* (and of Jauch's arrest),

an initial appearance within 48 hours of arrest was required. UNIF. R. CIR. & CNTY CT. P. 6.03. "Conditions under which the defendant may obtain release, if any," were also to be addressed. *Id.* There was also a "common existing practice" to allow the person to be released immediately on personal recognizance, on an appearance bond, or on any "provision for bail or personal recognizance . . . made by the judge" in an arrest warrant. MISS. R. CRIM. P. 5.1 & cmt. If none of those common practices applied, the initial appearance within 48 hours would address bail. *Id.* By a different court rule in effect when Jauch was arrested, "[a]t a preliminary hearing the judicial officer shall determine probable cause and the conditions for release, if any." UNIF. R. CIR. & CNTY CT. P. 6.04.

These rules and common practices must have been known to the *Delaney* court when it discussed the result of an indictment. Still, that court focused only on the purpose of determining probable cause, then held that after "a defendant is indicted by a grand jury, that purpose is fulfilled and the whole issue of a preliminary hearing *and all privileges which attach thereto* become moot." *Delaney,* 52 So. 3d at 350 (quoting *Mayfield*, 612 So. 2d at 1129) (emphasis added). Though *Delaney* did not discuss that a preliminary hearing was also a place for consideration of bail, the decision it principally relied upon, *Mayfield*, had overruled a precedent in which the issue of bail was discussed. *See Avery v. State*, 555 So. 2d 1039, 1041–42 (Miss. 1990) (overruling noted in *Mayfield*, 612 So. 2d at 1128–29). I acknowledge that defendant Delaney, a police officer, though arrested after indictment, seems to have been immediately allowed bail and was never jailed. *Delaney*, 52 So. 3d at 348–49. Though it is unreasonable to posit that the court in *Mayfield* was oblivious to the issue of bail when it discussed *Avery*, and ungenerous to conclude that the *Delaney* court was also oblivious when it analyzed *Mayfield*, it is also true that

nothing before the court required it to consider qualifying when these post-arrest procedures become moot. At least the sheriff in our case was not clearly informed of the opposite, namely, that he must promptly take Jauch to a judicial officer despite what *Delaney* held.

A contextual point for the analysis in the just-cited cases from 1990 and 1992 is that an initial appearance or a preliminary hearing was apparently the only mandated means for bringing a prisoner with some promptness before a judge. Mississippi did not provide for a prompt arraignment either by rule or statute. *See Spencer v. State*, 592 So. 2d 1382, 1389–90 (Miss. 1991). Not long after the 1991 *Spencer* decision, a rule of court was adopted that required an arraignment within 30 days of a defendant's being served with an indictment. UNIF. CIR. & CNTY. CT. R. 8.01 (adopted May 1, 1995). At arraignment, issues of bail may be considered. Rule 8.02.

Though Jauch relies on the current obligation for timely arraignments as another basis for her claim against the sheriff and County, the district court held that the right to an arraignment within 30 days was offset by the court rules I have discussed providing that after indictment, an accused does not have the right to a preliminary hearing or an initial appearance. I do not adopt or reject that reasoning. Regardless of how to read these rules together, nothing in this record supports that the obligation to schedule an arraignment falls on the County or the sheriff. I review what does appear in the record.

In the district court, Jauch cited a Mississippi Attorney General opinion answering the question of "who actually has the responsibility to physically transport or see to the transportation of the prisoner to a scheduled hearing," the sheriff who ran the jail or a different law enforcement agency who made the arrest? Miss. Op. Att'y Gen. 1992 WL 613847 (April 22, 1992). Rephrased, the basic question was "who drives?" Though the answer was "the sheriff," our

question is hardly the same. The circuit court itself decides whether to hear matters in vacation, *i.e.*, that time period between terms of court. MISS. CODE ANN. § 9-7-87. As I will discuss, only a circuit judge could resolve issues regarding Jauch's bail after her indictment, so getting such a judge back to Choctaw County was required. Reasonably, arraignments would be scheduled either by the court and its staff or the prosecutor, perhaps working together. Though I do not see an explicit answer as to whose responsibility it is, nothing supports that it is the sheriff's.

The clear responsibilities relevant to this case are those of the county's circuit court judges. Of course, I have already discussed that in the usual case, someone arrested may be released on personal recognizance, might have bail set in the arrest warrant itself, or at least is entitled to a quick initial appearance. MISS. R. CRIM. P. 5.1, 5.2. If a court is involved, it is likely a justice (of the peace) court, where the accused would respond to charges prepared by an arresting officer; bail is set by that court's judge. *See* MISS. CODE ANN. § 99-5-11. The form of the bond requires the individual to appear at the next term of the circuit court, which is when the next grand jury in the county will meet and decide whether to indict. § 99-5-1. After indictment, though, exclusive criminal jurisdiction over the accused is acquired by the circuit court. *Lyons v. State*, 196 So. 3d 1131, 1134–35 (Miss. Ct. App. 2016). Accordingly, release post-indictment is no longer within the authority of any local judge except for the county's circuit judges. The availability of one of those judges in the county is subject to the vagaries described in this opinion. Until there was, the sheriff had no judge to drive Jauch to see.

In summary, under state law the sheriff had no clear obligation to take Jauch before a judicial officer for an initial appearance or for a preliminary hearing because she had been indicted. There was no obligation on the sheriff

to have Jauch arraigned because that is a duty that falls elsewhere. The explicit obligation under the court-issued capias was to hold Jauch until the next circuit court term, which is just what the sheriff did. Those legal points are clear, to my eyes at least. The controlling question, then, is whether there was other law that with better clarity established that every reasonable sheriff would have known Jauch had a federal right that overrode these state procedures. *See Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

The only precedent the *Jauch* panel considered to be directly on point involved jail procedures in Jackson, Mississippi. *Jauch v. Choctaw Cnty.,* 874 F.3d 425, 429 (5th Cir. 2017) (citing *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000)). That is a decision that set no specific time limit for presenting a detainee to a magistrate, did not discuss the practice of waiting until the next term of court, and did not address a sheriff's responsibility in such matters. Absolutely critical, Jones had not been jailed after indictment. Thus, in light of what I have already discussed about indicted detainees, *Jones* seems all but irrelevant. Silence in these varied respects is itself enough to say *Jones* did not clearly establish the relevant law for the Choctaw County sheriff.

I will look more closely. The plaintiff Jones had been jailed on minor offenses in June 1994 but quickly determined to be innocent. *Jones*, 203 F.3d at 878. Nevertheless, he was detained on a judge's year-old bench warrant that had been issued for his failure to appear for sentencing in another matter. *Id.* He was given no opportunity to appear in court until March 1995, and at that time all charges were dismissed. *Id.* Jones then filed suit under Section 1983 against, among others, the sheriff for the county in which the City of Jackson is located. *Id.* This court denied summary judgment, including on the sheriff's claim of qualified immunity. *Id.* at 881.

10

In one paragraph, we explained our ruling. First, we held Jones's Fourteenth Amendment due process right had been violated because that amendment protects individuals "from unconstitutional actions by state actors." *Id.* at 880–81. Then this court cited *DeShaney v. Winnebago Cnty.*, 489 U.S. 189, 196 (1989), a case dealing with a public agency's responsibility for child abuse by a private actor. Finally, *Jones* cited *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972), which analyzed whether a university had violated an instructor's First Amendment rights. That's it for analysis.

*Jones* fails to put every, and I would say *any*, reasonable jail official on notice as to the constitutionally permissible limit of detention following a capias warrant. There is no indication that, in keeping Jones detained for months on a bench warrant, jailers were awaiting the next term of court. In Mississippi's capital of Jackson, the circuit court has essentially continuous terms of court. See MISS. JUD. DIR., at 36 (showing existence of 48- or 54-day terms of court beginning every other month). In Choctaw County, in contrast, the circuit judges sit periodically and then move on to intervening terms in the other counties. *Jones* did not place Choctaw County's sheriff on notice of a constitutional duty in these circumstances.

Of course, *Jones* is the law of this circuit. Nonetheless, its analysis was perfunctory, drawn from two very general Supreme Court pronouncements in civil cases. Neither *DeShaney* nor *Roth* could possibly constitute clearly established law about detention of prisoners; they are not criminal-law cases. As I will explain after discussing how the panel here applied *Jones,* qualified immunity law now makes clear that law enforcement officials are not required to discern how civil cases in much different contexts would apply to their activities. Even in *Jones*, a panel dissent contended that the law was not clearly established. *Jones*, 203 F.3d at 881–82 (Garza, J., dissenting).

11

Besides *Jones*, the *Jauch* panel relied on two other due process holdings. *Jauch*, 874 F.3d at 431–32 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Medina v. California*, 505 U.S. 437, 443 (1992)). They fail to provide guidance on sufficiently analogous facts to satisfy the qualified immunity standard. Insofar as *Eldridge* establishes a due process balancing test, that should automatically imply a lack of clearly established law until courts have declared on similar facts how to strike the procedural balance. *Medina* may provide even less guidance. The *Jauch* opinion states that it asks if a rule of criminal procedure "(i) 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or (ii) 'transgresses any recognized principle of "fundamental fairness" in operation.'" *Id.* at 432 (citation omitted). Given the dearth of cases saying how long is too long before an indicted individual must obtain a bail-setting hearing, *Medina* cannot have sufficiently informed the Choctaw County sheriff how he could avoid liability to Jauch.

I mentioned that a recent Supreme Court decision, so recent that the panel did not have its benefit, clarifies just what law is sufficiently clear to create a basis for liability. *See District of Columbia v. Wesby*, 138 S. Ct. 577 (2018). In that opinion, the Supreme Court informs us how closely analogous the facts in *Jones* must be to those in the current case in order for *Jones* to have clearly established the relevant law. The *Wesby* Court reversed the denial of qualified immunity to police officers whose assessment of probable cause had been challenged. *Id.* at 593. What is required before a precedent sufficiently establishes the law is a close congruence between the facts confronting a law enforcement officer and the precedent:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule

must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority . . . .'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.

*Id.* at 589–90 (citations omitted). Particularly clear in showing *Jones* is not a good fit, the Court said that its "'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him.*" *Id.* at 590 (emphasis added).

For all these reasons, the governing law was not clearly established to justify denying qualified immunity to the sheriff. Under *Wesby, Jones* is not a closely analogous case. Whether Jauch was detained unconstitutionally while awaiting the return of a circuit court judge is not clearly established by *Jones*, which did not set a specific time limitation and did not involve a circuit-riding judge. *Eldridge* and *Medina* offer general pronouncements about due process without remotely similar facts. Finally, this is not a case about indefinite detention. It is about unfairly delayed consideration for bail, but not a delay yet clearly announced as unconstitutional.

Of some importance as well, Mississippi's highest court, presumably informed of clearly established law, decided in *Delaney* that there was no need to take an indicted prisoner before a judicial official prior to the next term of court. Its decision was handed down a decade after our *Jones* decision and a year before the events in this case. Though the court did not consider that conditions of release could be addressed at a preliminary hearing, it still made its broad pronouncement that after an indictment, no preliminary hearing (and apparently no initial appearance either) was needed. This sheriff, in deciding obligations towards Jauch, had quite clear direction from the state court and

this court's opaque *Jones* opinion.  I do not see that every reasonable sheriff would have known that because of *Jones*, the state court wrote too broadly.

My able colleagues on the *Jauch* panel held that based on *Jones* and these more general authorities, it was "clearly established" that Mississippi's "policy whereby certain arrestees were indefinitely detained without access to courts" violates an individual's constitutional due process rights.  *Jauch*, 874 F.3d at 436.  No such clarity was established by *Jones* — it did not even deal with the relevant post-indictment procedures.  The panel also concluded it was "clearly established" that "the Constitution forbids confining criminal defendants for a prolonged period" before bringing them before a judge.  *Id.*  True, but what was not clear at all to someone responsible for detention is how prolonged detention must be to constitute a violation of rights.  The caselaw would not have informed very many officials that the state's post-indictment rules violated the federal Constitution.  Thus, qualified immunity applies.

Our function in this appeal is to determine whether clearly established rights of this prisoner were violated.  They were not.  Also clear, though, is that a county *should* not be allowing a prisoner's pretrial release to be unaddressed for extended periods.  Judges and jailers could cooperate to minimize delays in consideration.  A more robust public defender system would play a significant part by providing an early advocate to seek relief.  Even a sheriff, though not having the power to schedule a hearing, might rattle the cage on behalf of such a prisoner so that those who have the authority to do something will hear.

\* \* \*

Had the court agreed to rehear this case en banc, we could have thoroughly assessed the panel's due process reasoning for the sake of future

14

cases.[3]  We should have relieved the sheriff of having to go to trial.  Qualified immunity, after all, is immunity from suit, not simply from liability.  Importantly, we might also have reconsidered the holding that Choctaw County has any liability for Jauch's detention.  I respectfully dissent.

---

[3] The scope of any constitutional pretrial right to a bail hearing — as opposed to a preliminary probable cause hearing — is unclear, as the *Jauch* panel acknowledges.  Courts have split over the applicable due process theory and reasoning.  But there is an antecedent question whether such detention should be evaluated under the Sixth Amendment speedy trial right, a specific constitutional provision, rather than the amorphous standard of Fourteenth Amendment due process.  In *Baker v. McCollan,* the Court held that a person cannot be detained indefinitely, in part because "the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment[.]" 443 U.S. 137, 144, 145–46 (1979).  The Court has also repeatedly held that where a particular amendment textually provides constitutional protection of a right, that amendment should be the guide rather than the more generalized notion of due process.  *See Albright v. Oliver,* 510 U.S. 266, 273 (1994).