FILED
United States Court of Appeals
Tenth Circuit

April 24, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIANO MOYA, LONNIE
PETRY, on behalf of themselves and
all others similarly situated,

      Plaintiffs-Appellants,

v.

ROBERT GARCIA, Santa Fe County
Sheriff; MARK CALDWELL,
Warden of Santa Fe County Adult
Correctional Facility; MARK
GALLEGOS, former Warden of
Santa Fe County Adult Correctional
Facility, in their individual
capacities; BOARD OF
COMMISSIONERS OF SANTA FE
COUNTY,

      Defendants-Appellees.

No. 17-2037

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:16-CV-01022-WJ-KBM)**
_____

A. Nathaniel Chakeres (Todd A. Coberly with him on the briefs), of
Coberly & Martinez, LLLP, Santa Fe, New Mexico, for Plaintiffs-
Appellants.

Brandon Huss of The New Mexico Association of Counties, Santa Fe, New
Mexico, for Defendants-Appellees.
_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.
_____

This appeal involves claims of overdetention by Mr. Mariano Moya and Mr. Lonnie Petry. Both men were arrested based on outstanding warrants and detained in a county jail for 30 days or more prior to their arraignments. These arraignment delays violated New Mexico law, which requires arraignment of a defendant within 15 days of arrest. N.M. Stat. Ann. § 31-1-3; Rule 5-303(A) NMRA.

The arraignment delays led Mr. Moya and Mr. Petry to sue under 42 U.S.C. § 1983 for deprivation of due process, alleging claims against

- Sheriff Robert Garcia, Warden Mark Caldwell, and former Warden Mark Gallegos in their individual capacities under theories of personal participation and supervisory liability and

- the Board of Commissioners of Santa Fe County under a theory of municipal liability.

The district court granted the defendants' motion to dismiss for failure to state a valid claim. We affirm because Mr. Moya and Mr. Petry failed to plausibly allege a factual basis for liability.[1]

---

[1] The complaint contains claims based on both substantive and procedural due process. Based on our disposition, we need not distinguish between the claims involving procedural and substantive due process.

2

## I.    Standard of Review

We engage in de novo review of the dismissal under Federal Rule of Civil Procedure 12(b)(6). *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). In engaging in this review, we credit the well-pleaded allegations in the complaint and construe them favorably to the plaintiffs. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). To withstand dismissal, the plaintiffs' allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Supervisory Liability

The individual defendants served as the sheriff and wardens of the jail where Mr. Moya and Mr. Petry were detained. These defendants could potentially incur liability under § 1983 if they had acted under color of state law. 42 U.S.C. § 1983. But § 1983 is not always available against individual officials because they enjoy qualified immunity when their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cordova v. City of Albuquerque*, 816 F.3d 645, 655 (10th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

3

To avoid qualified immunity at the motion-to-dismiss stage, a plaintiff must show that

- "'the defendant's [alleged conduct] violated a constitutional or statutory right'" and

- "the right was 'clearly established at the time of the [violation].'"

*Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). There are two questions at the first step:

1. whether the plaintiff has adequately alleged the violation of a constitutional or statutory right and

2. whether the defendant's alleged conduct deprived the plaintiff of that right.

*See Dodds v. Richardson*, 614 F.3d 1185, 1192-94 (10th Cir. 2010) (engaging in this two-part analysis of the first step of qualified immunity).

The first question is whether Mr. Moya and Mr. Petry have adequately alleged a deprivation of due process. We need not decide this question because of our answer to the second question: in our view, the complaint does not plausibly allege facts attributing the potential constitutional violation to the sheriff or wardens.[2]

---

[2] Even if the defendants had not asserted qualified immunity, Mr. Moya and Mr. Petry would have needed to adequately allege facts showing causation. *See* 42 U.S.C. § 1983 ("Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

4

To prevail, Mr. Moya and Mr. Petry must have alleged facts showing that the sheriff and wardens had been personally involved in the underlying violations through their own participation or supervisory control. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010); *see also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."). The district court rejected both theories of liability. Here, though, Mr. Moya and Mr. Petry rely only on their theory of supervisory liability. For this theory, Mr. Moya and Mr. Petry blame the sheriff and wardens for the delays in the arraignments. In our view, however, the sheriff and wardens did not cause the arraignment delays.[3]

A plaintiff may succeed on a § 1983 supervisory-liability claim by showing that the defendant

- "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that . . . caused the complained of constitutional harm" and

- "acted with the state of mind required to establish the alleged constitutional deprivation."

---

[federal right], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."); *see also* Martin A. Schwartz, Section 1983 Litigation 91 (3d ed. 2014) ("The proximate cause requirement applies to all § 1983 claims.").

[3] The dissent disagrees with our causation analysis. In our view, however, the dissent stretches both the plaintiffs' theory of liability and the standard of causation applicable to § 1983 claims.

5

*Dodds*, 614 F.3d at 1199. But the arraignments could not be scheduled by anyone working for the sheriff or wardens; scheduling of the arraignments lay solely with the state trial court.

Mr. Moya and Mr. Petry disagree, relying on *Wilson v. Montano*, 715 F.3d 847 (10th Cir. 2013). There two sheriff's deputies arrested Mr. Wilson without a warrant. *Wilson*, 715 F.3d at 850. He was taken to jail and detained for eleven days without the filing of a complaint or an opportunity for a probable-cause determination. *Id.* Mr. Wilson sued the sheriff and the warden, alleging that they (1) had routinely allowed deputies to make arrests without warrants and (2) had failed to file criminal complaints or bring the arrestees to court. *Id.* at 851. The *Wilson* court upheld supervisory liability, reasoning that under New Mexico law the sheriff and the warden were responsible for running the jail and ensuring prompt probable-cause determinations. *Id.* at 856-58.

*Wilson* differs from our case on who controlled the situation causing the overdetention. In *Wilson*, the sheriff and the warden were in control because (1) deputy sheriffs had arrested Mr. Wilson and (2) the warden's staff had detained Mr. Wilson without a warrant. These facts proved decisive because (1) New Mexico law requires the sheriff to "diligently file a complaint or information," N.M. Stat. Ann. §§ 4-37-4, 29-1-1, and (2) the sheriff's staff had never filed a complaint against Mr. Wilson. *Wilson*, 715 F.3d at 851, 853. Without a complaint, the court could not

6

make a probable-cause determination. By preventing a probable-cause determination, the sheriff impeded the criminal-justice process; and the warden exacerbated the delay by detaining Mr. Wilson for eleven days without a court order. *Id.* at 857-59.

In contrast, the court was firmly in control here. Grand juries indicted Mr. Moya and Mr. Petry, and both individuals were arrested based on outstanding warrants issued by the court. And after these arrests, jail officials notified the court that Mr. Moya and Mr. Petry were in custody.

The arrests triggered New Mexico's Rules of Criminal Procedure, which entitled Mr. Moya and Mr. Petry to arraignments within fifteen days. Rule 5-303(A) NMRA. Compliance with this requirement lay solely with the court, for an arraignment is a court proceeding that takes place only when scheduled by the court. *See People v. Carter*, 699 N.E.2d 35, 38 (N.Y. 1998) ("Responsibility for scheduling an arraignment date and securing a defendant's appearance lies with the court, not the People.").

The court failed to comply with this requirement, resulting in overdetention of Mr. Moya and Mr. Petry. These overdetentions were caused by the court's failure to schedule and conduct timely arraignments rather than a lapse by the sheriff or wardens. *See Webb v. Thompson*, 643 F. App'x 718, 726 (10th Cir. 2016) (unpublished) (Gorsuch, J., concurring in part and dissenting in part) ("[T]he only relevant law anyone has cited to us comes from state law, and it indicates that the duty to ensure a

7

constitutionally timely arraignment in Utah falls on the *arresting* officer—

not on *correctional* officers.").

Mr. Moya and Mr. Petry argue that the sheriff and wardens could have mitigated the risk of overdetention by keeping track of whether detainees had been timely arraigned, requesting arraignments for those who had been overdetained, or bringing detainees to court prior to a scheduled arraignment. But the sheriff and wardens did not *cause* the overdetention. At most, the sheriff and wardens failed to remind the court that it was taking too long to arraign Mr. Moya and Mr. Petry. But even with such a reminder, the arraignments could only be scheduled by the court itself. *See Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (holding that the county did not cause the overdetention, reasoning that the county could only ask for federal help and that the county lacked the "ability itself to bring the prisoner before the appropriate judicial officer").[4]

---

[4] The dissent points out that (1) *Estate of Brooks* involved a federal detainee's claim against a county and (2) our case involves a state detainee. Dissent at 14 n.7. This difference shrouds the underlying rationale in *Estate of Brooks*. There the court reasoned that the county's policies did not cause the overdetention because the county lacked authority to release the detainee or bring him before a federal magistrate judge. *Estate of Brooks*, 197 F.3d at 1248. Here the defendants did not cause the overdetention because they could not have initiated an arraignment and, as discussed below, the plaintiffs have disavowed any argument that the sheriff or wardens could have ordered release. *See* pp. 10-11, below.

8

The plaintiffs rely in part on *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), and *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992). In those cases, a clerical error prevented the court from discovering the arrests and the need to schedule arraignments.[5] But here, Mr. Moya and Mr. Petry do not allege a failure to tell the court of their arrests in sufficient time to conduct the arraignments within fifteen days.

Mr. Moya and Mr. Petry also rely on *Jauch v. Choctaw County*, 874 F.3d 425 (5th Cir. 2017), and *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004). But the conclusions in *Jauch* and *Hayes* are not precedential, pertinent, or persuasive.

In *Jauch*, the sheriff's office adopted a procedure of holding defendants in jail without any court proceeding until the reconvening of the circuit court that had issued the capias warrants. *Jauch*, 874 F.3d at 430, 435. This procedure resulted in detention for 96 days, with jail officials rejecting the defendant's requests to be brought before a judge. *Id.* at 428. The Fifth Circuit Court of Appeals held that the sheriff could

---

Although the circumstances differed in *Estate of Brooks*, the court reasoned that the jailers' limited powers prevented causation. That rationale is applicable and persuasive.

[5]    *Oviatt* arguably implies that jailers can cause an arraignment delay by failing to remind a court to schedule the arraignment. To the extent that *Oviatt* draws this implication, we disagree.

9

incur liability for the institution of this unconstitutional policy. *Id.* at 436-37.[6]

In our view, *Jauch* bears limited applicability. *Jauch* rested on Mississippi law and the jailers' authority to release detainees when they had been detained too long without an opportunity for bail. *Id.* In interpreting Mississippi law, the court pointed to *Sheffield v. Reece*, 28 So. 2d 745, 748 (Miss. 1947), which had required sheriffs to prevent detention "'for an unreasonable length of time.'" *Jauch*, 874 F.3d at 437 (quoting *Sheffield*, 28 So. 2d at 748). As *Jauch* pointed out, *Sheffield* had recognized the responsibility of the sheriff to release an arrestee who has been detained too long without bail. *Id.* at 437.

Here, however, Mr. Moya and Mr. Petry have not alleged that they could have been released. To the contrary, they expressly disavowed this theory in their opening brief:

> [The district court] . . . noted that the [county jail] was legally prohibited from releasing detainees without a valid court order.
>
> Yet Mr. Moya and Mr. Petry never argued that Defendants should have unconditionally released them from jail, so the fact that the [county jail] may have been prohibited from releasing them absent a court order is irrelevant.

---

[6]    On the basis of the sheriff's policy, the county also incurred liability. *Jauch*, 874 F.3d at 436.

10

Appellants' Opening Br. at 29 (citation omitted). In light of this disavowal of an argument that Mr. Moya and Mr. Petry should have been released, *Jauch* provides little guidance on what the sheriff and wardens could have done to avoid the due process violations other than remind the state trial court of *its* failure to schedule timely arraignments.[7]

*Hayes*, too, provides little that is pertinent or persuasive. There an arrestee alleged that (1) he should have been brought before a judge in a timely manner and (2) no one from the jail had told him when his court

---

[7] In *Jauch*, the Fifth Circuit Court of Appeals recently denied a petition for rehearing en banc. *See Jauch v. Choctaw Cty.*, ___F.3d ___, No. 16-60690, 2018 WL 1542262 (5th Cir. Mar. 29, 2018) (Southwick, J., dissenting from denial of rehearing en banc). Judge Southwick—joined by five other judges—dissented from the denial, arguing that the sheriff should have obtained qualified immunity. *Id.* at *1. In making this argument, the dissent concluded that

- under Mississippi law, the state district court had the sole responsibility to schedule an arraignment and

- no federal law clearly established that the sheriff would violate the U.S. Constitution by following state law.

*Id.* at *4-6. In reaching these conclusions, the dissent observed that under Mississippi law, the jailers could not prevent the overdetention because the state district court had the exclusive authority to schedule and conduct arraignments. *See id.* at *1 ("I cannot discern how these defendants had any effect on when this plaintiff was considered for release."); *id.* ("There was no obligation on the sheriff to have Jauch arraigned because that is a duty that falls elsewhere."); *id.* at *4 ("The clear responsibilities relevant to this case are those of the county's circuit court judges."); *id.* ("There was no obligation on the sheriff to have Jauch arraigned because that is a duty that falls elsewhere.").

11

date was (even though one had been set at the time of arrest). *Hayes v. Faulkner Cty.*, 388 F.3d 669, 672 (8th Cir. 2004). The Eighth Circuit Court of Appeals concluded that an extended detention without a first appearance, after an arrest by warrant, violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 673. The court added that responsibility for the arrestee's overdetention fell on the jailers, who could not delegate responsibility for the first appearance to the court. *Id.* at 674.

But *Hayes* sheds no light on what the jailers here could have done to ensure timely court proceedings. In *Hayes*, the Eighth Circuit apparently relied on a state procedural rule: Arkansas Rule of Criminal Procedure 8.1. This rule requires arrestees to be brought before the court "'without unnecessary delay.'" *Id.* at 675 (quoting Ark. R. Crim. P. 8.1).

Like Arkansas, New Mexico requires "[e]very accused" to be "brought before a court . . . without unnecessary delay." N.M. Stat. Ann. § 31-1-5(B). Arkansas's version goes no further, omitting any mention of *who* is required to bring the arrestee to court. Ark. R. Crim. P. 8.1. New Mexico takes a different approach, clarifying elsewhere that the *arresting officer* is obligated to bring the defendant to court "without unnecessary delay." N.M. Stat. Ann. § 31-1-4(C).[8]

---

[8] This statute did not apply here, for the plaintiffs do not allege that they were arrested by officers subject to the defendants' supervisory

12

Unlike the Arkansas rule, New Mexico's version of the rule does not impose any duties on the sheriff or warden to bring an arrestee to court in the absence of a scheduled arraignment. In light of this difference between the Arkansas and New Mexico rules, we see nothing in *Hayes* to tell us what the sheriff or wardens could have done to provide timely arraignments for Mr. Moya and Mr. Petry.

The approach taken in *Hayes* is also inconsistent with our own precedent. The *Hayes* court attributed responsibility to the jailers based solely on federal law, not state law. By contrast, our precedent directs us to focus on *state* law when determining the scope of the defendants' responsibility to ensure prompt hearings. *See Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013) ("We consider New Mexico state law insofar as it bears on the scope of each appellant's responsibility to ensure a prompt probable cause determination.").

And as we have discussed, New Mexico law did not require the sheriff or wardens to bring Mr. Moya and Mr. Petry to court. Accordingly, once the arresting officers brought Mr. Moya and Mr. Petry to the jail and the court was notified of the arrests, New Mexico law required the court (not the sheriff or wardens) to schedule timely arraignments.

---

authority. We thus have no occasion to decide whether a cause of action could have been asserted against the arresting officers or their supervisors.

13

Under New Mexico law, *Jauch* and *Hayes* provide little guidance to us in addressing the issue framed by Mr. Moya and Mr. Petry. They allege that the state trial court failed to schedule timely arraignments and that the sheriff and wardens told the court about the arrests early enough for timely arraignments. But Mr. Moya and Mr. Petry did not sue the court; they sued the sheriff and wardens, officials that could not have caused the arraignment delays because of their inability to schedule the arraignments.

## III.   The Dissent's Theory

The dissent argues that we have analyzed the wrong right. According to the dissent, the right to an arraignment within fifteen days is "'an expectation of receiving process,'" which cannot alone be a protected liberty interest. Dissent at 4-5, 8, 13 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)). Thus, the dissent reasons that the right at issue must be the right to freedom from pretrial detention rather than the right to a timely arraignment. Based on this reasoning, the dissent concludes that our misplaced focus on arraignment has caused us to improperly focus on the state district court's role and overlook actions that the defendants could have taken, such as releasing Mr. Moya and Mr. Petry.

We have focused on the plaintiffs' right to timely arraignment because that's what the plaintiffs have alleged. As the dissent admits, Mr. Moya and Mr. Petry are imprecise about their asserted right, conflating the right to an arraignment within fifteen days of arrest and the right to

14

pretrial release (or bail). This conflation is understandable because the rights are coextensive under their theory of the case.

Mr. Moya and Mr. Petry recognize freedom from detention as an applicable liberty interest. *See, e.g.*, Joint App'x at 7 (stating in the complaint that the New Mexico Constitution creates a right to pretrial liberty); *id.* at 83 (asserting in district court briefing that Mr. Moya and Mr. Petry "have a liberty interest in not being unnecessarily detained without the opportunity to post bail"); Appellants' Opening Br. at 16 ("The principal protected liberty interest that may be created by state law is the freedom from detention."). But Mr. Moya and Mr. Petry also allege a right to an arraignment within fifteen days of arrest. *See, e.g.*, Joint App'x at 14 (alleging in the complaint that "[b]ecause detainees charged in New Mexico district courts . . . are guaranteed the right under state law to have their conditions of release set at the least restrictive level to assure their appearance and the safety of . . . the community within fifteen days of their indictment or arrest, they have a federally protected liberty interest in this right"); *id.* at 69 (asserting in district court that "Plaintiffs had a liberty interest in having bail set within fifteen days of their arrest"); Appellants' Opening Br. at 36 ("In summary, under settled procedural due process principles, Defendants deprived Mr. Moya and Mr. Petry of their liberty interest in a prompt pretrial arraignment . . . .").

Under the theory articulated by Mr. Moya and Mr. Petry, the defendants violated the right to freedom from detention by failing to ensure timely arraignments. *See, e.g.*, Appellants' Opening Br. at 41 ("The Complaint alleged that the failure to implement any policies ensuring that detainees appear before a district court within fifteen days of indictment or arrest caused Mr. Moya and Mr. Petry to be injured."). The rights are coextensive to Mr. Moya and Mr. Petry because to them, a violation of the right to a timely arraignment resulted in violation of their right to freedom from prolonged detention.[9]

Yet the dissent disregards the claim of delay in the arraignment because this claim would founder based on the absence of a due-process violation. The dissent may be right about the absence of a due-process violation from a delay in an arraignment.[10] But in our view, we should interpret the claim and appeal based on what the plaintiffs have actually

---

[9]    This link is illustrated by the plaintiffs' definition of the class. In the complaint, Mr. Moya and Mr. Petry identified the class to include everyone detained at the same facility as the named plaintiffs within the previous three years "who [had not been] brought before a district court within fifteen days of their indictment or arrest to have their conditions of release set or reviewed." Joint App'x at 12-13. Timely arraignment is so fundamental to Mr. Moya and Mr. Petry's claims that the fifteen-day demarcation defines class membership.

[10]    As noted above, we have assumed for the sake of argument that the arraignment delays would result in a deprivation of due process. *See* p. 4, above.

said rather than which possible interpretation could succeed. In district court, the plaintiffs based their claim on the delays in arraignments. And on appeal, the plaintiffs have consistently framed their argument based on the arraignment delays. The dissent's theory is not the theory presented by the plaintiffs.[11]

As discussed above, the defendants were powerless to cause timely arraignments because arraignments are scheduled by the court rather than jail officials. The dissent agrees.

But the dissent theorizes that jail officials could have simply released Mr. Moya and Mr. Petry. This theory is not only new but also contrary to what Mr. Moya and Mr. Petry have told us, for they expressly disavowed this theory: "Mr. Moya and Mr. Petry never argued that Defendants should have unconditionally released them from jail . . . ." Appellants' Opening Br. at 29; *see* pp. 10-11, above. Thus, Mr. Moya and Mr. Petry have waived reliance on that theory as a basis for reversal. *See Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*, 864 F.3d 1212, 1224 n.8 (10th Cir. Jul. 25, 2017) (stating that a theory never raised was waived as a basis for reversal).

---

[11] For this reason, we need not decide whether Mr. Moya and Mr. Petry would have stated a valid claim if they had alleged a broader right to freedom from pretrial detention (unrelated to Rule 5-303(A)'s fifteen-day requirement). We are deciding only the validity of the theory advanced by Mr. Moya and Mr. Petry.

Even if it were otherwise appropriate to raise the issue sua sponte, the dissent's theory would create a Catch-22 for jailers. Under New Mexico law, jailers commit a misdemeanor and must be removed from office if they deliberately release a prisoner absent a court order. N.M. Stat. Ann. § 33-3-12. Thus, a jailer would be forced to choose between committing a crime and facing civil liability under § 1983.

According to the dissent, jailers can eventually defend themselves based on the Supremacy Clause. But Mr. Moya and Mr. Petry do not challenge the constitutionality of the state law preventing release in the absence of a court order. *See Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (affirming the dismissal of a § 1983 claim involving overdetention when the county defendant was required under state law to hold the plaintiff detainee until receiving an order from the United States and the plaintiff made no allegation that the statute was unconstitutional).

Even if Mr. Moya and Mr. Petry had challenged the constitutionality of the state law, the Supremacy Clause would supply cold comfort to a jailer facing this dilemma, particularly in light of the dissent's acknowledgment that there is no bright-line rule for when a delayed arraignment becomes a due-process violation. *See* Dissent at 5-11. We need not decide whether the Constitution would subject jailers to this Catch-22.

* * *

18

The state trial court's alleged failure to schedule timely arraignments cannot be attributed to the sheriff or wardens. Thus, the complaint does not plausibly allege a basis for supervisory liability of the sheriff or wardens.

## IV. Municipal Liability

Mr. Moya and Mr. Petry also assert § 1983 claims against the county, alleging that it failed to adopt a policy to ensure arraignments within fifteen days. These claims are based on the alleged inaction by the sheriff and wardens. But, as discussed above, the sheriff and wardens did not cause the arraignment delays. Thus, the county could not incur liability under § 1983 on the basis of the alleged inaction. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013); *see generally* note 2, above. Therefore, we affirm the dismissal of the claims against the county.

## V. Leave to Amend

In opposing dismissal, Mr. Moya and Mr. Petry stated generically that amendment would not be futile and that they should have the opportunity to amend if an element were deemed missing from the complaint. The district court dismissed the complaint without granting leave to amend. Mr. Moya and Mr. Petry argue that the district court erred by refusing to allow amendment of the complaint.

Generally, leave to amend should be freely granted when justice requires, but amendment may be denied when it would be futile. *Full Life*

19

*Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). We conclude that the district court did not err because amendment would have been futile based on the plaintiffs' submissions.

We ordinarily apply the abuse-of-discretion standard when reviewing a denial of leave to amend. *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). But here, the district court denied leave to amend based on futility. In this circumstance, "our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1249 (10th Cir. 2009).

The complaint fails to allege a factual basis for supervisory or municipal liability. To cure the pleading defect, the plaintiffs needed to add factual allegations tying the arraignment delays to a lapse by the sheriff or wardens. The plaintiffs did not say how they could cure this pleading defect. Instead, they stated only that amendment would not be futile if the complaint had omitted an element. They did not tell the district court what they could have added to attribute the arraignment delays to the sheriff or wardens.

Mr. Moya and Mr. Petry have failed to say even now how they could have cured this defect in the complaint. As a result, the district court did not abuse its discretion in denying leave to amend the complaint. *See Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (holding that the district

20

court did not abuse its discretion in denying leave to amend when the claimant had failed to explain how an amendment would cure the deficiencies identified by the district court).

## VI.    Conclusion

Mr. Moya and Mr. Petry allege a deprivation of due process when they were detained for more than fifteen days without arraignments. We can assume, without deciding, that this allegation involved a constitutional violation. But Mr. Moya and Mr. Petry sued the sheriff, wardens, and county, and these parties did not cause the arraignment delays. Thus, the district court did not err in dismissing the complaint or in denying leave to amend.