**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIANO MOYA; LONNIE PETRY, on
behalf of themselves and all others
similarly situated,

     Plaintiffs - Appellants,

v.

ROBERT GARCIA, Santa Fe County
Sheriff; MARK CALDWELL, Warden of
Santa Fe County Adult Correctional
Facility; MARK GALLEGOS, former
Warden Santa Fe County Adult
Correctional Facility, in their individual
capacities; BOARD OF
COMMISSIONERS OF SANTA FE
COUNTY,

     Defendants - Appellees.

No. 17-2037
(D.C. No. 1:16-CV-01022-WJ-KBM)
(D. N.M.)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, **LUCERO**, **HARTZ**, **HOLMES**,
**MATHESON**, **BACHARACH**, **PHILLIPS**, McHUGH, **MORITZ**, **EID**, and
**CARSON**, Circuit Judges.
_____

This matter is before the court on the appellants' *Petition for Rehearing En Banc*.

We also have a response from the appellees.

Upon consideration, a majority of the original panel members grant panel

rehearing in part and only to the extent of the limited changes made to the attached

revised opinion. Panel rehearing is otherwise denied. The Clerk is directed to file the amended decision, with the original separate writing from Judge McHugh, effective the date of this order.

In addition, however, the petition and the response were circulated to all of the judges of the court who are in regular active service. A poll was called, and a majority voted to deny the en banc petition. *See* Fed. R. App. P. 35(a). Consequently, the request for en banc consideration is denied.

Chief Judge Tymkovich, as well as Judges Lucero, McHugh and Moritz voted to grant rehearing en banc.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIANO MOYA, LONNIE
PETRY, on behalf of themselves and
all others similarly situated,

    Plaintiffs-Appellants,

v.

ROBERT GARCIA, Santa Fe County
Sheriff; MARK CALDWELL,
Warden of Santa Fe County Adult
Correctional Facility; MARK
GALLEGOS, former Warden of
Santa Fe County Adult Correctional
Facility, in their individual
capacities; BOARD OF
COMMISSIONERS OF SANTA FE
COUNTY,

    Defendants-Appellees.

No. 17-2037

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:16-CV-01022-WJ-KBM)**
_____

A. Nathaniel Chakeres (Todd A. Coberly with him on the briefs), of
Coberly & Martinez, LLLP, Santa Fe, New Mexico, for Plaintiffs-
Appellants.

Brandon Huss of The New Mexico Association of Counties, Santa Fe, New
Mexico, for Defendants-Appellees.
_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves claims of overdetention by Mr. Mariano Moya and Mr. Lonnie Petry. Both men were arrested based on outstanding warrants and detained in a county jail for 30 days or more prior to their arraignments. These arraignment delays violated New Mexico law, which requires arraignment of a defendant within 15 days of arrest. N.M. Stat. Ann. § 31-1-3; Rule 5-303(A) NMRA.

The arraignment delays led Mr. Moya and Mr. Petry to sue under 42 U.S.C. § 1983 for deprivation of due process, alleging claims against

- Sheriff Robert Garcia, Warden Mark Caldwell, and former Warden Mark Gallegos in their individual capacities under theories of personal participation and supervisory liability and

- the Board of Commissioners of Santa Fe County under a theory of municipal liability.

The district court granted the defendants' motion to dismiss for failure to state a valid claim. We affirm because Mr. Moya and Mr. Petry failed to plausibly allege a factual basis for liability.[1]

---

[1] The complaint contains claims based on both substantive and procedural due process. Based on our disposition, we need not distinguish between the claims involving procedural and substantive due process.

## I. Standard of Review

We engage in de novo review of the dismissal under Federal Rule of Civil Procedure 12(b)(6). *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). In engaging in this review, we credit the well-pleaded allegations in the complaint and construe them favorably to the plaintiffs. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). To withstand dismissal, the plaintiffs' allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Supervisory Liability

The individual defendants served as the sheriff and wardens of the jail where Mr. Moya and Mr. Petry were detained. These defendants could potentially incur liability under § 1983 if they had acted under color of state law. 42 U.S.C. § 1983. But individual officials enjoy qualified immunity when their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cordova v. City of Albuquerque*, 816 F.3d 645, 655 (10th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

To avoid qualified immunity at the motion-to-dismiss stage, a plaintiff must show that

3

- "'the defendant's [alleged conduct] violated a constitutional or statutory right'" and

- "the right was 'clearly established at the time of the [violation].'"

*Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). There are two questions at the first step:

1. whether the plaintiff has adequately alleged the violation of a constitutional or statutory right and

2. whether the defendant's alleged conduct deprived the plaintiff of that right.

*See Dodds v. Richardson*, 614 F.3d 1185, 1192-94 (10th Cir. 2010) (engaging in this two-part analysis of the first step of qualified immunity).

The first question is whether Mr. Moya and Mr. Petry have adequately alleged a deprivation of due process. We need not decide this question because of our answer to the second question: in our view, the complaint does not plausibly allege facts attributing the potential constitutional violation to the sheriff or wardens.[2]

To prevail, Mr. Moya and Mr. Petry must have alleged facts showing that the sheriff and wardens had been personally involved in the underlying violations through their own participation or supervisory control. *Dodds v.*

---

[2] Even in the absence of qualified immunity, Mr. Moya and Mr. Petry would have needed to adequately allege facts attributing the potential constitutional violation to the defendants.

4

*Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010); *see also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."). The district court rejected both theories of liability. Here, though, Mr. Moya and Mr. Petry rely only on their theory of supervisory liability. For this theory, Mr. Moya and Mr. Petry blame the sheriff and wardens for the delays in the arraignments. In our view, however, the sheriff and wardens did not cause the arraignment delays.[3]

A plaintiff may succeed on a § 1983 supervisory-liability claim by showing that the defendant

- "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that . . . caused the complained of constitutional harm" and

- "acted with the state of mind required to establish the alleged constitutional deprivation."

*Dodds*, 614 F.3d at 1199. But the arraignments could not be scheduled by anyone working for the sheriff or wardens; scheduling of the arraignments lay solely with the state trial court.

Mr. Moya and Mr. Petry disagree, relying on *Wilson v. Montano*, 715 F.3d 847 (10th Cir. 2013). There two sheriff's deputies arrested Mr. Wilson without a warrant. *Wilson*, 715 F.3d at 850. He was taken to jail

---

[3] The dissent disagrees with our causation analysis. In our view, however, the dissent stretches both the plaintiffs' theory of liability and the standard of causation applicable to § 1983 claims.

and detained for eleven days without the filing of a complaint or an opportunity for a probable-cause determination. *Id.* Mr. Wilson sued the sheriff and the warden, alleging that they (1) had routinely allowed deputies to make arrests without warrants and (2) had failed to file criminal complaints or bring the arrestees to court. *Id.* at 851. The *Wilson* court upheld supervisory liability, reasoning that under New Mexico law the sheriff and the warden were responsible for running the jail and ensuring prompt probable-cause determinations. *Id.* at 856-58.

*Wilson* differs from our case on who controlled the situation causing the overdetention. In *Wilson*, the sheriff and the warden were in control because (1) deputy sheriffs had arrested Mr. Wilson and (2) the warden's staff had detained Mr. Wilson without a warrant. These facts proved decisive because (1) New Mexico law requires the sheriff to "diligently file a complaint or information," N.M. Stat. Ann. §§ 4-37-4, 29-1-1, and (2) the sheriff's staff had never filed a complaint against Mr. Wilson. *Wilson*, 715 F.3d at 851, 853. Without a complaint, the court could not make a probable-cause determination. By preventing a probable-cause determination, the sheriff impeded the criminal-justice process; and the warden exacerbated the delay by detaining Mr. Wilson for eleven days without a court order. *Id.* at 857-59.

In contrast, the court was firmly in control here. Grand juries indicted Mr. Moya and Mr. Petry, and both individuals were arrested based

on outstanding warrants issued by the court. And after these arrests, jail officials notified the court that Mr. Moya and Mr. Petry were in custody.

The arrests triggered New Mexico's Rules of Criminal Procedure, which entitled Mr. Moya and Mr. Petry to arraignments within fifteen days. Rule 5-303(A) NMRA. Compliance with this requirement lay solely with the court, for an arraignment is a court proceeding that takes place only when scheduled by the court. *See People v. Carter*, 699 N.E.2d 35, 38 (N.Y. 1998) ("Responsibility for scheduling an arraignment date and securing a defendant's appearance lies with the court, not the People.").

The court failed to comply with this requirement, resulting in overdetention of Mr. Moya and Mr. Petry. These overdetentions were caused by the court's failure to schedule and conduct timely arraignments rather than a lapse by the sheriff or wardens. *See Webb v. Thompson*, 643 F. App'x 718, 726 (10th Cir. 2016) (unpublished) (Gorsuch, J., concurring in part and dissenting in part) ("[T]he only relevant law anyone has cited to us comes from state law, and it indicates that the duty to ensure a constitutionally timely arraignment in Utah falls on the *arresting* officer— not on *correctional* officers.").

Mr. Moya and Mr. Petry argue that the sheriff and wardens could have mitigated the risk of overdetention by keeping track of whether detainees had been timely arraigned, requesting arraignments for those who had been overdetained, or bringing detainees to court prior to a scheduled

7

arraignment. But even if the sheriff and wardens had taken these actions, the allegations in the complaint give us no reason to think that the state trial court would have conducted the arraignments and ordered release any earlier than it did. Thus, the sheriff and wardens did not cause the overdetention.

At most, the sheriff and wardens failed to remind the court that it was taking too long to arraign Mr. Moya and Mr. Petry. But even with such a reminder, the arraignments could only be scheduled by the court itself. *See Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (holding that the county did not cause the overdetention, reasoning that the county could only ask for federal help and that the county lacked the "ability itself to bring the prisoner before the appropriate judicial officer").[4]

---

[4] The dissent points out that (1) *Estate of Brooks* involved a federal detainee's claim against a county and (2) our case involves a state detainee. Dissent at 14 n.7. This difference shrouds the underlying rationale in *Estate of Brooks*. There the court reasoned that the county's policies did not cause the overdetention because the county lacked authority to release the detainee or bring him before a federal magistrate judge. *Estate of Brooks*, 197 F.3d at 1248. Here the defendants did not cause the overdetention because they could not have initiated an arraignment and, as discussed below, the plaintiffs have disavowed any argument that the sheriff or wardens could have ordered release. *See* pp. 10-11, below.

Although the circumstances differed in *Estate of Brooks*, the court reasoned that the jailers' limited powers prevented causation. That rationale is applicable and persuasive.

8

The plaintiffs rely in part on *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), and *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992). In those cases, a clerical error prevented the court from discovering the arrests and the need to schedule arraignments.[5] But here, Mr. Moya and Mr. Petry do not allege a failure to tell the court of their arrests in sufficient time to conduct the arraignments within fifteen days.

Mr. Moya and Mr. Petry also rely on *Jauch v. Choctaw County*, 874 F.3d 425 (5th Cir. 2017), and *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004). But the conclusions in *Jauch* and *Hayes* are not precedential, pertinent, or persuasive.

In *Jauch*, the sheriff's office adopted a procedure of holding defendants in jail without any court proceeding until the reconvening of the circuit court that had issued the capias warrants. *Jauch*, 874 F.3d at 430, 435. This procedure resulted in detention for 96 days, with jail officials rejecting the defendant's requests to be brought before a judge. *Id.* at 428. The Fifth Circuit Court of Appeals held that the sheriff could

---

[5]   *Oviatt* arguably implies that jailers can cause an arraignment delay by failing to remind a court to schedule the arraignment. To the extent that *Oviatt* draws this implication, we disagree.

incur liability for the institution of this unconstitutional policy. *Id.* at 436-37.[6]

In our view, *Jauch* bears limited applicability. *Jauch* rested on Mississippi law and the jailers' authority to release detainees when they had been detained too long without an opportunity for bail. *Id.* In interpreting Mississippi law, the court pointed to *Sheffield v. Reece*, 28 So. 2d 745, 748 (Miss. 1947), which had required sheriffs to prevent detention "'for an unreasonable length of time.'" *Jauch*, 874 F.3d at 437 (quoting *Sheffield*, 28 So. 2d at 748). As *Jauch* pointed out, *Sheffield* had recognized the responsibility of the sheriff to release an arrestee who has been detained too long without bail. *Id.* at 437.

Here, however, Mr. Moya and Mr. Petry have not alleged that they could have been released. To the contrary, they expressly disavowed this theory in their opening brief:

> [The district court] . . . noted that the [county jail] was legally prohibited from releasing detainees without a valid court order.
>
> Yet Mr. Moya and Mr. Petry never argued that Defendants should have unconditionally released them from jail, so the fact that the [county jail] may have been prohibited from releasing them absent a court order is irrelevant.

---

[6]     On the basis of the sheriff's policy, the county also incurred liability. *Jauch*, 874 F.3d at 436.

10

Appellants' Opening Br. at 29 (citation omitted). In light of this disavowal of an argument that Mr. Moya and Mr. Petry should have been released, *Jauch* provides little guidance on what the sheriff and wardens could have done to avoid the due process violations other than remind the state trial court of *its* failure to schedule timely arraignments.[7]

*Hayes*, too, provides little that is pertinent or persuasive. There an arrestee alleged that (1) he should have been brought before a judge in a timely manner and (2) no one from the jail had told him when his court date was (even though one had been set at the time of arrest). *Hayes v. Faulkner Cty.*, 388 F.3d 669, 672 (8th Cir. 2004). The Eighth Circuit Court

---

[7] In *Jauch*, the Fifth Circuit Court of Appeals recently denied a petition for rehearing en banc. *See Jauch v. Choctaw Cty.*, 886 F.3d 534 (5th Cir. 2018). Judge Southwick—joined by five other judges—dissented from the denial, arguing that the sheriff should have obtained qualified immunity. *Id.* at 535 (Southwick, J., dissenting). In making this argument, the dissent concluded that

- under Mississippi law, the state district court had the sole responsibility to schedule an arraignment and

- no federal law clearly established that the sheriff would violate the U.S. Constitution by following state law.

*Id.* at 538-41. In reaching these conclusions, the dissent observed that under Mississippi law, the jailers could not prevent the overdetention because the state district court had the exclusive authority to schedule and conduct arraignments. *See id.* at 535 ("I cannot discern how these defendants had any effect on when this plaintiff was considered for release."); *id.* at 539 ("There was no obligation on the sheriff to have Jauch arraigned because that is a duty that falls elsewhere."); *id.* at 538 ("The clear responsibilities relevant to this case are those of the county's circuit court judges.").

of Appeals concluded that an extended detention without a first appearance, after an arrest by warrant, violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 673. The court added that responsibility for the arrestee's overdetention fell on the jailers, who could not delegate responsibility for the first appearance to the court. *Id.* at 674.

But *Hayes* sheds no light on what the jailers here could have done to ensure timely court proceedings. In *Hayes*, the Eighth Circuit apparently relied on a state procedural rule: Arkansas Rule of Criminal Procedure 8.1. This rule requires arrestees to be brought before the court "'without unnecessary delay.'" *Id.* at 675 (quoting Ark. R. Crim. P. 8.1).

Like Arkansas, New Mexico requires "[e]very accused" to be "brought before a court . . . without unnecessary delay." N.M. Stat. Ann. § 31-1-5(B). Arkansas's version goes no further, omitting any mention of *who* is required to bring the arrestee to court. Ark. R. Crim. P. 8.1. New Mexico takes a different approach, clarifying elsewhere that the *arresting officer* is obligated to bring the defendant to court "without unnecessary delay." N.M. Stat. Ann. § 31-1-4(C).[8]

Unlike the Arkansas rule, New Mexico's version of the rule does not impose any duties on the sheriff or warden to bring an arrestee to court in

---

[8]   This statute did not apply here, for the plaintiffs do not allege that they were arrested by officers subject to the defendants' supervisory authority. We thus have no occasion to decide whether a cause of action could have been asserted against the arresting officers or their supervisors.

12

the absence of a scheduled arraignment. In light of this difference between the Arkansas and New Mexico rules, we see nothing in *Hayes* to tell us what the sheriff or wardens could have done to provide timely arraignments for Mr. Moya and Mr. Petry.

The approach taken in *Hayes* is also inconsistent with our own precedent. The *Hayes* court attributed responsibility to the jailers based solely on federal law, not state law. By contrast, our precedent directs us to focus on *state* law when determining the scope of the defendants' responsibility to ensure prompt hearings. *See Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013) ("We consider New Mexico state law insofar as it bears on the scope of each appellant's responsibility to ensure a prompt probable cause determination.").

And as we have discussed, New Mexico law did not require the sheriff or wardens to bring Mr. Moya and Mr. Petry to court. Accordingly, once the arresting officers brought Mr. Moya and Mr. Petry to the jail and the court was notified of the arrests, New Mexico law required the court (not the sheriff or wardens) to schedule timely arraignments.

Under New Mexico law, *Jauch* and *Hayes* provide little guidance to us in addressing the issue framed by Mr. Moya and Mr. Petry. They allege that the state trial court failed to schedule timely arraignments and that the sheriff and wardens told the court about the arrests early enough for timely arraignments. But Mr. Moya and Mr. Petry did not sue the court; they sued

13

the sheriff and wardens, officials that could not have caused the arraignment delays because of their inability to schedule the arraignments.

## III.   The Dissent's Theory

The dissent argues that we have analyzed the wrong right. According to the dissent, the right to an arraignment within fifteen days is "'an expectation of receiving process,'" which cannot alone be a protected liberty interest. Dissent at 4-5, 8, 13 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)). Thus, the dissent reasons that the right at issue must be the right to freedom from pretrial detention rather than the right to a timely arraignment. Based on this reasoning, the dissent concludes that our misplaced focus on the arraignments has caused us to improperly focus on the state district court's role and overlook actions that the defendants could have taken, such as releasing Mr. Moya and Mr. Petry.

We have focused on the plaintiffs' right to timely arraignment because that's what the plaintiffs have alleged. As the dissent admits, Mr. Moya and Mr. Petry are imprecise about their asserted right, conflating the right to an arraignment within fifteen days of arrest and the right to pretrial release (or bail). This conflation is understandable because the rights are coextensive under their theory of the case.

Mr. Moya and Mr. Petry recognize freedom from detention as an applicable liberty interest. *See, e.g.*, Joint App'x at 7 (stating in the complaint that the New Mexico Constitution creates a right to pretrial

14

liberty); *id.* at 83 (asserting in district court briefing that Mr. Moya and Mr. Petry "have a liberty interest in not being unnecessarily detained without the opportunity to post bail"); Appellants' Opening Br. at 16 ("The principal protected liberty interest that may be created by state law is the freedom from detention."). But Mr. Moya and Mr. Petry also allege a right to an arraignment within fifteen days of arrest. *See, e.g.*, Joint App'x at 14 (alleging in the complaint that "[b]ecause detainees charged in New Mexico district courts . . . are guaranteed the right under state law to have their conditions of release set at the least restrictive level to assure their appearance and the safety of . . . the community within fifteen days of their indictment or arrest, they have a federally protected liberty interest in this right"); *id.* at 69 (asserting in district court that "Plaintiffs had a liberty interest in having bail set within fifteen days of their arrest"); Appellants' Opening Br. at 36 ("In summary, under settled procedural due process principles, Defendants deprived Mr. Moya and Mr. Petry of their liberty interest in a prompt pretrial arraignment . . . .").

Under the theory articulated by Mr. Moya and Mr. Petry, the defendants violated the right to freedom from detention by failing to ensure timely arraignments. *See, e.g.*, Appellants' Opening Br. at 41 ("The Complaint alleged that the failure to implement any policies ensuring that detainees appear before a district court within fifteen days of indictment or arrest caused Mr. Moya and Mr. Petry to be injured."). The rights are

coextensive to Mr. Moya and Mr. Petry because to them, a violation of the right to a timely arraignment resulted in violation of their right to freedom from prolonged detention.[9]

Yet the dissent disregards the claim of delay in the arraignment because this claim would founder based on the absence of a due-process violation. The dissent may be right about the absence of a due-process violation from a delay in an arraignment.[10] But in our view, we should interpret the claim and appeal based on what the plaintiffs have actually said rather than which possible interpretation could succeed. In district court, the plaintiffs based their claim on the delays in arraignments. And on appeal, the plaintiffs have consistently framed their argument based on the arraignment delays. The dissent's theory is not the theory presented by the plaintiffs.[11]

---

[9]    This link is illustrated by the plaintiffs' definition of the class. In the complaint, Mr. Moya and Mr. Petry identified the class to include everyone detained at the same facility as the named plaintiffs within the previous three years "who [had not been] brought before a district court within fifteen days of their indictment or arrest to have their conditions of release set or reviewed." Joint App'x at 12-13. Timely arraignment is so fundamental to Mr. Moya and Mr. Petry's claims that the fifteen-day demarcation defines class membership.

[10]    As noted above, we have assumed for the sake of argument that the arraignment delays would result in a deprivation of due process. *See* p. 4, above.

[11]    For this reason, we need not decide whether Mr. Moya and Mr. Petry would have stated a valid claim if they had alleged a broader right to

As discussed above, the defendants were powerless to cause timely arraignments because arraignments are scheduled by the court rather than jail officials. The dissent agrees.

But the dissent theorizes that jail officials could have simply released Mr. Moya and Mr. Petry. This theory is not only new but also contrary to what Mr. Moya and Mr. Petry have told us, for they expressly disavowed this theory: "Mr. Moya and Mr. Petry never argued that Defendants should have unconditionally released them from jail . . . ." Appellants' Opening Br. at 29; *see* pp. 10-11, above. Thus, Mr. Moya and Mr. Petry have waived reliance on that theory as a basis for reversal. *See Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*, 864 F.3d 1212, 1224 n.8 (10th Cir. Jul. 25, 2017) (stating that a theory never raised was waived as a basis for reversal).

Even if it were otherwise appropriate to raise the issue sua sponte, the dissent's theory would create a Catch-22 for jailers. Under New Mexico law, jailers commit a misdemeanor and must be removed from office if they deliberately release a prisoner absent a court order. N.M. Stat. Ann. § 33-3-12. Thus, a jailer would be forced to choose between committing a crime and facing civil liability under § 1983.

freedom from pretrial detention (unrelated to Rule 5-303(A)'s fifteen-day requirement). We are deciding only the validity of the theory advanced by Mr. Moya and Mr. Petry.

According to the dissent, jailers can eventually defend themselves based on the Supremacy Clause. But Mr. Moya and Mr. Petry do not challenge the constitutionality of the state law preventing release in the absence of a court order. *See Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (affirming the dismissal of a § 1983 claim involving overdetention when the county defendant was required under state law to hold the plaintiff detainee until receiving an order from the United States and the plaintiff made no allegation that the statute was unconstitutional).

Even if Mr. Moya and Mr. Petry had challenged the constitutionality of the state law, the Supremacy Clause would supply cold comfort to a jailer facing this dilemma, particularly in light of the dissent's acknowledgment that there is no bright-line rule for when a delayed arraignment becomes a due-process violation. *See* Dissent at 5-11. We need not decide whether the Constitution would subject jailers to this Catch-22.

\* \* \*

The state trial court's alleged failure to schedule timely arraignments cannot be attributed to the sheriff or wardens. Thus, the complaint does not plausibly allege a basis for supervisory liability of the sheriff or wardens.

## IV. Municipal Liability

Mr. Moya and Mr. Petry also assert § 1983 claims against the county, alleging that it failed to adopt a policy to ensure arraignments within

18

fifteen days. These claims are based on the alleged inaction by the sheriff and wardens. But, as discussed above, the sheriff and wardens did not cause the arraignment delays. Thus, the county could not incur liability under § 1983 on the basis of the alleged inaction. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013). Therefore, we affirm the dismissal of the claims against the county.

## V.     Leave to Amend

In opposing dismissal, Mr. Moya and Mr. Petry stated generically that amendment would not be futile and that they should have the opportunity to amend if an element were deemed missing from the complaint. The district court dismissed the complaint without granting leave to amend. Mr. Moya and Mr. Petry argue that the district court erred by refusing to allow amendment of the complaint.

Generally, leave to amend should be freely granted when justice requires, but amendment may be denied when it would be futile. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). We conclude that the district court did not err because amendment would have been futile based on the plaintiffs' submissions.

We ordinarily apply the abuse-of-discretion standard when reviewing a denial of leave to amend. *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). But here, the district court denied leave to amend based on futility. In this circumstance, "our review for abuse of discretion

19

includes de novo review of the legal basis for the finding of futility."
*Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1249 (10th Cir. 2009).

The complaint fails to allege a factual basis for supervisory or municipal liability. To cure the pleading defect, the plaintiffs needed to add factual allegations tying the arraignment delays to a lapse by the sheriff or wardens. The plaintiffs did not say how they could cure this pleading defect. Instead, they stated only that amendment would not be futile if the complaint had omitted an element. They did not tell the district court what they could have added to attribute the arraignment delays to the sheriff or wardens.

Mr. Moya and Mr. Petry have failed to say even now how they could have cured this defect in the complaint. As a result, the district court did not abuse its discretion in denying leave to amend the complaint. *See Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (holding that the district court did not abuse its discretion in denying leave to amend when the claimant had failed to explain how an amendment would cure the deficiencies identified by the district court).

## VI. Conclusion

Mr. Moya and Mr. Petry allege a deprivation of due process when they were detained for more than fifteen days without arraignments. We can assume, without deciding, that this allegation involved a constitutional

violation. But Mr. Moya and Mr. Petry sued the sheriff, wardens, and county, and these parties did not cause the arraignment delays. Thus, the district court did not err in dismissing the complaint or in denying leave to amend.

17-2037, *Moya v. Garcia*

**McHUGH**, Circuit Judge, concurring in the result in part and dissenting in part.

Mariano Moya was arrested pursuant to a valid bench warrant and booked into a Santa Fe County jail. The warrant, issued by New Mexico's First Judicial District Court, commanded any authorized officer to (1) arrest Mr. Moya and (2) bring him "forthwith" before said court. New Mexico's law enforcement officers complied with the first directive, but not the second. As a result, Mr. Moya sat in jail for more than two months.[1] When finally brought before a judge—sixty-three days after he was first detained—the judge set bond at $5,000 and directed the state to release Mr. Moya from custody immediately. The same thing happened to Lonnie Petry, except that his jail stay was only about half as long.

Believing their prolonged detentions to be systemic of a policy and practice affecting dozens, if not hundreds, of similarly situated arrestees, Mr. Moya and Mr. Petry brought this § 1983 action against the Board of Commissioners of Santa Fe County ("the County") and three County officials who were responsible for implementing policy at the jail. The majority affirms the dismissal of Plaintiffs' claims for failure to allege plausibly that any of these defendants violated their constitutional rights. Respectfully, I disagree. I would reverse the district court's order dismissing Plaintiffs' claims against the County.

---

[1] Because the district court dismissed Plaintiffs' claims on a Rule 12(b)(6) motion, we presume Plaintiffs' factual allegations are true. *See Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017).

But because the Defendants did not violate clearly established law, I would hold that the individual defendants are entitled to qualified immunity and, on that basis alone, partially affirm the district court's order.

## I. PLAINTIFFS' THEORIES OF HARM

To begin, it is important to be clear about the nature of the alleged constitutional violations. Plaintiffs' claims fall "into a category of claims which unfortunately have become so common that they have acquired their own term of art: 'overdetention,' *i.e.*, when the plaintiff has been imprisoned by the defendant for longer than legally authorized, whether because the plaintiff's incarcerative sentence has expired or otherwise." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) (some internal quotation marks omitted). In this case, Plaintiffs argue that their overdetention supports both a procedural due process claim and a substantive due process claim. Although the majority does not distinguish between these theories, *see* Maj. Op. at 2 n.1, I think it worthwhile to consider how Plaintiffs' allegations fit within each framework.

### A. *Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then

2

(2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cty.*

*Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011).[2]

Starting with the first prong, "[p]rotected liberty interests may arise from two

sources—the Due Process Clause itself and the laws of the States." *Kentucky Dep't of*

*Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal quotation marks omitted). We

have already held that the "right of an accused to freedom pending trial is inherent in the

concept of a liberty interest protected by the due process clause of the Fourteenth

Amendment." *Dodds*, 614 F.3d at 1192; *Meechaicum v. Fountain*, 696 F.2d 790, 791–92

(10th Cir. 1983).[3]

---

[2] In *Jauch v. Chocraw Cty.*, 874 F.3d 425, 431 (5th Cir. 2017), the Fifth Circuit analyzed a comparable procedural due process claim under the framework set forth in *Medina v. California*, 505 U.S. 437, 443 (1992), rather than the framework set forth in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In this case, both parties have assumed that the *Mathews* framework applies. For purposes of this dissent, I will presume without deciding that the *Mathews* framework is applicable.

[3] There is no serious question that Plaintiffs have a protected liberty interest arising from the Due Process Clause itself. "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972) (citation omitted). The liberty guaranteed by the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, [and so on]. In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Id.* at 572 (citation omitted) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). In this case, the Plaintiffs allege they *were deprived of freedom from bodily restraint*—the very core of liberty itself. This a state cannot do without affording adequate process. *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("It is fundamental that the state cannot hold . . . an individual except in accordance with due process of law.").

In this case, however, Plaintiffs assert that the protected liberty interest grounding their procedural due process claims arises not from the Due Process Clause itself, but rather from New Mexico law. This is fine. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause[, b]ut these interests will be generally limited to freedom from restraint . . . ." (citation omitted)). But it is imperative that we accurately identify the exact nature of the state-created liberty interest Plaintiffs seek to protect. In presenting their case, Plaintiffs have tended to conflate the right to freedom (or bail) with the right to procedures requiring timely bail hearings. Although both are rights created by New Mexico law, *see State v. Brown*, 338 P.3d 1276, 1282 (N.M. 2014) ("The New Mexico Constitution affords criminal defendants a right to bail . . . ."); Rule 5–303(A) NMRA (providing that defendants shall be arraigned within fifteen days of a triggering event, such as an arrest), only the former can be a protected liberty interest. That is because "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983); *accord Cordova v. City of Albuquerque*, 816 F.3d 645, 657 (10th Cir. 2016) ("[N]ot all state laws create constitutionally protected liberty interests.").

To the extent Plaintiffs argue that New Mexico's fifteen-day rule "creates a liberty interest protected by constitutional procedural due process," their position "reflects a confusion between what is a liberty interest and what procedures the government must follow before it can restrict or deny that interest." *See Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). In other words, "[t]hey 'collapse the distinction between the

4

interest protected and the process that protects it.'" *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 772 (2005) (Souter, J., concurring) (alterations omitted)). And Plaintiffs are inconsistent in how they frame their protected liberty interest, sometimes relying on New Mexico's fifteen-day rule as an end unto itself and sometimes hinting at the fundamental underlying right to be free of restraint. *Compare* Aplt. Br. at 16 ("New Mexico[] . . . guaranteed Mr. Moya and Mr. Petry the opportunity to obtain pretrial release no later than fifteen days after arrest."), *and id.* at 32 ("[I]t should have been clear to Defendants that, based on New Mexico law and settled due process principles, pretrial detainees have procedural due process rights *to adequate procedures* allowing them to timely obtain bail.") (emphasis added)), *with id.* at 16 ("The principal protected liberty interest that may be created by state law is the freedom from detention."), *and id.* at 18 ("Mr. Moya and Mr. Petry . . . had a protected liberty interest in obtaining a prompt bail determination").

I would, accordingly, begin the procedural due process analysis by clarifying that Plaintiffs' only relevant protected liberty interest is in their right to "freedom pending trial." *Dodds*, 614 F.3d at 1192; *see Baker v. McCollan*, 443 U.S. 137, 144 (1979) (finding that arrestee was "deprived of his liberty" when detained in county jail for three days). That right may be duly honored via a timely bail determination, but the timely bail determination is a means, not an end. The source of Plaintiffs' liberty interest does not much matter, but it can be said to arise from either the United States Constitution, *see Baker*, 443 U.S. at 144; *Dodds*, 614 F.3d at 1192, the New Mexico Constitution, *see Brown*, 338 P.3d at 1282, or both. Although New Mexico is free to create procedural

5

rights protecting the underlying right to bail, as it has done here, *see* Rule 5–303 NMRA, the failure of its state officials to protect *state-law* procedural rights is not a Fourteenth Amendment violation, so long as federal due process requirements (which may well be lower) are satisfied. We would not be the first court to note the irony that, were the rule otherwise, its effect would be to subject states offering *more* procedural protections to stricter federal oversight. *See Hewitt v. Helms*, 459 U.S. 460, 471 (1983); *Fields v. Henry County*, 701 F.3d 180, 186 (6th Cir. 2012) (noting that such a policy could even discourage states from creating their own systems of procedural rights for fear of triggering federal liability).

The sufficiency of the process afforded Plaintiffs—the adequacy and timeliness of their bail determinations—implicates the second prong of the procedural due process test, not the first. As to this latter question, we ask whether Plaintiffs were afforded all the process that was their due. *See Thompson*, 490 U.S at 460. I would have no difficulty holding that Plaintiffs have plausibly alleged that they were not afforded an appropriate level of process. *See Jauch v. Choctaw Cty.*, 874 F.3d 425, 434 (5th Cir. 2017) ("[B]lithely waiting months before affording the defendant access to the justice system is patently unfair in a society where guilt is not presumed."); *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1476 (9th Cir. 1992) (applying the *Mathews v. Eldridge* balancing test and finding a county jail's procedures for avoiding overdetention to be inadequate); *cf. Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) ("Detention of a prisoner for over thirty days beyond the expiration of his sentence in the absence of a

facially valid court order or warrant constitutes a deprivation of due process." (internal quotation marks omitted)).

## B.     *Substantive Due Process*

"Substantive due process bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). Under our precedent there are "two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citing *Chavez v. Martinez*, 538 U.S. 760, 787 (2003) (Stevens, J., concurring in part and dissenting in part)). "A fundamental right or liberty interest is one that is 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Chavez*, 538 U.S. at 775 (plurality opinion)). "Conduct that shocks the judicial conscience, on the other hand, is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Id.* (quoting *Lewis*, 523 U.S. at 845). From this point in the analysis, our precedent is decidedly less clear.

Substantive due process limits what the government may do in both its legislative and executive capacities. And the Supreme Court has said that the doctrinal strand to be applied "differ[s] depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Lewis*, 523 U.S. at 846. Here, Plaintiffs challenge executive action, which the Court has said violates substantive due process "*only* when it

7

can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847 (emphasis added) (internal quotation marks omitted). In *Seegmiller*, however, we refused to read *Lewis* as "establish[ing] an inflexible dichotomy" between cases challenging legislative and executive action. 528 F.3d at 768. In that case, which also involved executive action, the district court had found "that the *only* appropriate standard with which to measure [the substantive due process] claim is the shocks the conscience standard." *Id.* at 767. We held that was error. *Id.* Although we had "no qualms agreeing with the district court that the [Defendant's] conduct would not meet the requirements of the shocks the conscience test," we proceeded to analyze the challenged executive action under the "fundamental liberty" framework. *See id.* at 769–72 & 769 n.2. "[T]he distinction between legislative and executive action," we explained, "is ancillary to the real issue in substantive due process cases: whether the plaintiff suffered from governmental action that either (1) infringes upon a fundamental right, or (2) shocks the conscience." *Id.* at 768. Those two tests, we continued, "are but two separate approaches to analyzing governmental action under the Fourteenth Amendment." *Id.* at 769. "They are not mutually exclusive," we concluded, and "[c]ourts should not unilaterally choose to consider only one or the other of the two strands. Both approaches may well be applied in any given case." *Id.*

More recent opinions from this court have called the *Seegmiller* framework into doubt. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–79 (10th Cir. 2015) ("If the infringement is the result of executive action, the Supreme Court has instructed us to ask whether that action bears a 'reasonable justification in the service of a legitimate

8

governmental objective' or if instead it might be 'characterized as arbitrary, or conscience shocking.'" (quoting *Lewis*, 523 U.S. at 846, 847)); *id.* at 1079 n.1 ("[W]e can say with certainty . . . that *Chavez* did not expressly overrule *Lewis*'s holding that the 'arbitrary or conscience shocking' test is the appropriate one for executive action so we feel obliged to apply it."); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009) (clarifying that "when *legislative* action is at issue, . . . only the traditional [fundamental rights] substantive due process framework is applicable"). Neither *Browder* nor *Dias* was heard by the full court. "Because one panel of our court cannot overrule prior panel decisions and earlier panel decisions control over later ones," *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 n.2 (10th Cir. 2014), I would normally treat *Seegmiller*'s gloss on *Lewis* as binding and ask whether Plaintiffs' complaint alleges that they "suffered from governmental action that either (1) infringes upon a fundamental right, *or* (2) shocks the conscience." *Seegmiller*, 528 F.3d at 768 (emphasis added).

Notwithstanding our normal rule about favoring earlier panel decisions, it is an open question in my mind whether *Seegmiller* is binding on this point. First, our published decision in *Brower* characterizes *Seegmiller*'s analysis as dicta. *Browder*, 787 F.3d at 1079, n.1. Second, in a recent unpublished opinion, Chief Judge Tymkovich, who wrote for the panel in *Seegmiller* and joined then-Judge Gorsuch's panel opinion in *Browder*, explained that he is in accord with *Browder* and *Dias* and that, to the extent *Seegmiller* is inconsistent, the earlier case is properly dismissed as dicta. *See Dawson v. Bd. of Cty. Comm'rs*, No. 17-1118, 2018 WL 1256477, at *9–10 (10th Cir. Mar. 9, 2018) (Tymkovich, C.J., concurring) ("Our Circuit has settled on the following solution: if the

9

case involves a *legislative act*, only the 'rights' strand applies. On the other hand, when the case involves *executive action* by a government official or entity, we apply the 'shocks the conscience' test." (citations omitted)).

Following *Lewis*, the district court in this case applied only the "shocks the conscience" test. *See Moya v. Garcia*, No. 1:16-CV-01022-WJ-KBM, 2017 WL 4536080, at *4 (D.N.M. Feb. 13, 2017) ("To establish a substantive due process violation, Plaintiffs must show Defendants' behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" (quoting *Lewis*, 523 U.S. at 847 n.8)). On appeal, the parties have argued past each other without ever focusing on the tension in our case law. Neither side cited either *Seegmiller* or *Broward*. Plaintiffs' opening brief did not even reference the "shocks the conscience" test at all, asserting instead a "fundamental liberty interest in pretrial release" as the basis for their substantive due process claim. Aplt. Br. at 21. Defendants in turn did not engage with Plaintiffs' "fundamental liberty" analysis, urging instead that the district court be affirmed because Plaintiffs "failed to allege conscience-shocking conduct on the part of the defendants." Aplee. Br. at 34–36. Plaintiffs then asserted in their reply brief that their "allegations, if proven, shock the conscience." Aplt. Reply Br. at 21. And at oral argument Plaintiffs effectively adopted the *Seegmiller* view, stating "there's two ways you can get to substantive due process violations," Oral Arg. 2:30–2:57. That is, either the "shocks the conscience" standard or the fundamental rights standard will do. *Id.*

I need not and, writing only for myself, cannot resolve the crosswinds in our case law. I have already explained that Plaintiffs have plausibly pleaded a deprivation of their

10

procedural due process rights. That is grist enough for me to engage with the majority's

causation analysis.[4]

## II.    CAUSATION

Properly understood, Plaintiffs' alleged injury is the unconstitutional deprivation

of their liberty through overdetention. As to causation, Plaintiffs' argument is

straightforward: they allege the sheriff and wardens jointly held the keys to their jail

cells. By keeping Plaintiffs behind bars—day after day after day—the sheriff and

wardens were deliberately indifferent to their constitutional right to freedom pending

trial.

In finding causation lacking, the majority focuses on the state court's conduct,

rather than the Defendants' conduct. As portrayed by the majority, Mr. Moya and Mr.

Petry "blame the sheriff and wardens for the delays in the arraignments." Maj. Op. at 5.

Because the sheriff and wardens had no power to schedule the arraignments, the

majority's thinking goes, the sheriff and wardens had no power to prevent or cure the

alleged constitutional violations. *See id.* ("the sheriff and wardens did not cause the

arraignment delays"); *id.* at 8 ("[T]he sheriff and wardens did not *cause* the

---

[4] Defendants argue that Plaintiffs should be permitted to litigate their claims only under the rubric of procedural due process. We have previously said that "[w]here a plaintiff has recourse to an 'explicit textual source of constitutional protection,' a more general claim of substantive due process is not available." *Shrum v. City of Coweta*, 449 F.3d 1132, 1145 (10th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Our sister circuits are divided as to whether overdetention claims sound in procedural or substantive due process. *See Jauch*, 874 F.3d at 430 (collecting cases). Although I would hold that Plaintiffs have pleaded a plausible procedural due process claim, I decline to opine on whether a substantive due process claim might also be viable.

11

overdetention. At most, the sheriff and wardens failed to remind the court that it was taking too long to arraign Mr. Moya and Mr. Petry."); *id.* at 19 ("The state trial court's alleged failure to schedule timely arraignments cannot be attributed to the sheriff or wardens."). But, in my view, causation follows from the constitutionally cognizable injury that Plaintiffs alleged. Here we see why "a 'careful description' of the allegedly violated right," *Browder*, 787 F.3d at 1078, is so crucial. On my reading of the complaint, Plaintiffs are not seeking to hold the sheriff and wardens accountable for the court's scheduling decisions; instead, they are seeking to hold them accountable for the lengthy detentions that no court authorized.[5] Again, a timely bail hearing is a means to securing Plaintiffs' protected liberty interests, not an end unto itself.

The majority explains that it focused on the right to a timely bail hearing "because that's what the plaintiffs have alleged," Maj. Op. at 14, all the while conceding that Plaintiffs have *also* alleged a violation of their "right to freedom from detention," *id.* at 16. Under the majority's framing, these rights "are coextensive to Mr. Moya and Mr. Petry because to them, a violation of the right to a timely arraignment resulted in violation of their right to freedom from prolonged detention." *Id.* But the majority's own description demonstrates that these rights are not one and the same.[6] The state-law

_____

[5] Recall the Complaint alleges that the bench warrants authorizing Plaintiffs' arrests "commanded any authorized officer to 'arrest [Plaintiff], and bring him forthwith before this court.'" Joint App'x 10–11, Compl. ¶¶ 26, 33; *see Forthwith*, Black's Law Dictionary (10th ed. 2014) ("1. Immediately; without delay. 2. Directly; promptly; within a reasonable time under the circumstances; with all convenient dispatch.").

[6] According to the majority, the interchangeability of the liberty interests is illustrated by Plaintiffs' definition of the putative class, which would include only those

procedural right to a timely arraignment is protective of, not coextensive with, the right to liberty. The majority assumes without deciding that Plaintiffs alleged a violation of the state-law procedural right to a timely arraignment and then concludes that their constitutional claims fail because the warden and sheriffs did not cause the violation of state procedural law. That analysis works fine as far as it goes, but it is incomplete. The majority never considers whether the complaint adequately alleges a violation of the more fundamental right. Nor does it consider whether the individual defendants' alleged conduct deprived Plaintiffs of that right. In my view, this more fundamental question is fairly alleged in the complaint and presented in Plaintiffs' briefing. Therefore, I think this court is obliged to consider it, not least because it is an "interpretation [that] could succeed." Maj. Op. at 17.

By focusing on the arraignment rather than the detention, the majority naturally finds that the causal force lies with the state court's conduct, rather than with the jailers' conduct. And by focusing on the state court's conduct, rather than the jailers' conduct, the majority reaches a result heretofore unseen in an overdetention case. As best I can tell, our decision today puts us at odds with every circuit to consider the apportionment of blame between state courts and state jailers where a § 1983 plaintiff alleges that he or she was overdetained. *See Jauch*, 874 F.3d at 430, 436 (county's policy of indefinitely detaining arrestees until the court next convened was "the moving force" behind the

---

detainees held for longer than the fifteen days allowed under New Mexico law. Maj. Op. at 16 n.9. This is a non sequitur. Plaintiffs' proposed class definition tells us nothing about whether their complaint plausibly alleges individual due process claims on any theory fairly presented.

13

constitutional injury); *Hayes v. Faulkner Cty.*, 388 F.3d 669, 674 (8th Cir. 2004) (county's policy of waiting for the court to schedule a hearing "ignore[d] the jail's authority for long-term confinement" and was "deliberately indifferent to detainees' due process rights"); *Armstrong v. Squadrito*, 152 F.3d 564, 579 (7th Cir. 1998) ("[J]ailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty."); *Oviatt*, 954 F.2d at 1476–77 (holding that due process required sheriff to enact reasonable procedures for decreasing erroneous incarcerations).[7] The majority distinguishes *Armstrong* and *Oviatt* because, in those cases, "a clerical error prevented the court from discovering the arrests and the need to schedule arraignments," so there would have been no basis for placing blame on the state court. Maj. Op. at 9. And in our case, by contrast, "Mr. Moya and Mr. Petry do not allege a failure to tell the court of their arrests in sufficient time to conduct the arraignments within" the time required under state law. *Id.* at 9. I agree with the majority that *Armstrong* and *Oviatt* are distinguishable. But that distinction does not change the underlying reasoning that the jailers are the ones directly depriving the detainees of their protected liberty interest in freedom pending trial. And, in any event, *Jauch* and *Hayes* are not so easily distinguished.

---

[7] *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245 (9th Cir. 1999), is not to the contrary. That case also involved an overdetention claim brought under § 1983 against a county, but there the county acted pursuant to an order from the United States Marshals Service. *Id.* at 1246. Distinguishing *Oviatt*, the Ninth Circuit held that "[w]hereas *Oviatt* was a case involving whether the left hand knew what the right hand was doing, this is a case involving whether *my* left hand knows what *your* right hand is doing." *Id.* at 1248. In this case, we consider only state actors, and so *Brooks* is easily distinguishable.

14

In *Jauch*, the plaintiff, Jessica Jauch, was indicted by a grand jury, arrested, and put in jail, where she waited for ninety-six days before she was brought before a judge. 874 F.3d at 428. She later brought suit under § 1983 against the county and the sheriff, alleging, *inter alia*, violations of both procedural and substantive due process. *Id.* The district court denied Ms. Jauch's motion for summary judgment and instead ordered judgment in favor of the defendants. *Id.* The Fifth Circuit reversed, holding that (a) the sheriff was not entitled to qualified immunity and (b) Ms. Jauch was entitled to judgment in her favor on her procedural due process claim. *Id.* at 429, 437.

The majority distinguishes *Jauch* on the ground that its causation analysis "rested on Mississippi law," which "recognize[s] the responsibility of the sheriff to release an arrestee who has been detained too long without bail." Maj. Op. at 10 (citing *Jauch*, 874 F.3d at 437). As the Fifth Circuit explained, however, it merely cited Mississippi law for the unremarkable propositions that (1) the sheriff is responsible for those incarcerated in his jail, *see Jauch*, 874 F.3d at 436–37 (citing Miss. Code. Ann. § 19-25-69), and (2) county sheriffs are responsible "to hold detainees in a manner consistent with their oaths to uphold the federal and state constitutions," *id.* at 437 (citing *Sheffield v. Reece*, 28 So. 2d 745, 748 (Miss. 1947)). New Mexico law does not differ on either point, except perhaps that it extends those responsibilities to its wardens as well. *See* N.M. Stat. Ann. § 33–3–1 ("The common jails shall be under the control of the respective sheriffs. . . ."); *id.* § 33–1–2(E) (stating "'warden' . . . means the administrative director of a correctional facility"); *Wilson v. Montano*, 715 F.3d 847, 856–57 (10th Cir. 2013) (relying on these provisions to conclude that, under New Mexico law, wardens and sheriffs share

15

responsibility for the policies and customs at county jails and for any failure to adequately train their subordinates); *see also* N.M. Const. art. XX, § 1 (requiring "[e]very person elected or appointed to any office" to take an oath to support the federal and state constitutions).

Next, the majority finds *Jauch* of limited guidance because Mr. Moya and Mr. Petry expressly disavowed any argument that the sheriff and wardens could have or should have released them from custody without a valid court order. Maj. Op. at 10–11. Respectfully, I am not persuaded. Mr. Moya and Mr. Petry argue there was "plenty Defendants could, and should, have done short of releasing Mr. Moya and Mr. Petry to ensure that they received prompt bail determinations." Aplt. Br. at 29. For instance, they suggest, the sheriff and wardens could have reviewed court dockets to determine whether arraignments were being timely scheduled, and if not, they could have requested immediate arraignments. Or they could have physically brought Mr. Moya or Mr. Petry before a judicial officer at any time. But alas "we cannot know what . . . could have [been] done to allow bail, because [the jailers] did nothing at all." *Jauch*, 874 F.3d at 437 n.10.[8] Even on the majority's view of Plaintiffs' alleged liberty interest, its causation

---

[8] The Fifth Circuit recently decided against rehearing *Jauch* en banc. *See Jauch v. Choctaw Cty.*, No. 16-60690, 2018 WL 1542262 (5th Cir. Mar. 29, 2018). Six judges voted in favor of rehearing; they would have held that qualified immunity applies. *Id.* at *6 (Southwick, J., dissenting from denial of rehearing en banc). But the dissenting judges seemingly were not in agreement as to whether *Jauch*'s holding as to Choctaw County also should have been reconsidered. *See id.* at *7. In any event, they were not blind to the possibility that jailers have the power to prevent constitutional violations in cases like these. *See id.* ("[A] a county should not be allowing a prisoner's pretrial release to be unaddressed for extended periods. Judges and jailers could cooperate to minimize delays in consideration. . . . Even a sheriff, though not having the power to schedule a hearing,

16

analysis is "overly rigid." *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1250 (9th Cir. 1999) (Hawkins, J., dissenting) (noting that the county could have reminded the relevant authorities of the detainee's right to see a magistrate; thus, "the County was not helpless to avoid the injury to [the detainee] and so was a legal cause of his injury").

Nor does the majority meaningfully distinguish the Eighth Circuit's opinion in *Hayes*. In that case, the plaintiff, James M. Hayes, was ticketed for not having automobile tags and vehicle insurance. *Hayes*, 388 F.3d at 672. Mr. Hayes failed to appear at his municipal court hearing, and so bench warrants were issued for his arrest. *Id.* On April 3, 1998, he was stopped for a traffic violation, arrested on the warrants, given a court date of May 11, and jailed. *Id.* Mr. Hayes did not post a $593 cash-only bond and remained in jail until appearing before the court on May 11, thirty-eight days after his arrest. *Id.* He too brought suit under § 1983 against the county and sheriff. *Id.* The Eighth Circuit affirmed the district court's entry of judgment against the sheriff in his individual capacity, finding that a "law enforcement officer cannot reasonably believe that holding a person in jail for 38 days without bringing him before a judicial officer for an initial appearance is constitutional." *Id.* at 675. The majority explains that it cannot follow *Hayes* because the Eighth Circuit's approach, which "attributed responsibility to the jailers based solely on federal law, not state law," is "inconsistent" with Tenth Circuit precedent that "directs us to focus on state law when determining the scope of the

might rattle the cage on behalf of such a prisoner so that those who have the authority to do something will hear." (emphasis deleted)).

17

defendants' responsibility to ensure prompt hearings." Maj. Op. at 13 (emphasis deleted) (citing *Wilson*, 715 F.3d at 854).[9] Again, I differ with the majority, which in my view focuses on the wrong deprivation and thus the wrong actor.

Nothing in *Wilson* requires us to adopt the majority's analytical approach. Nor does *Wilson* preclude us from following our sister circuits' persuasive reasoning in comparable cases. In *Wilson*, the plaintiff, Michael Wilson Sr., was arrested without a warrant and booked into a New Mexico county jail. 715 F.3d at 850. He was detained for eleven days before he was released by order of a magistrate judge. *Id.* Because Mr. Wilson was arrested without a judicial finding of probable cause, his ensuing § 1983 action sounded in the Fourth Amendment, rather than the Fourteenth. *Id.* We held that the district court correctly denied the sheriff's and warden's motions to dismiss for failure to state a claim and for qualified immunity. *Id.* at 857–58. In reaching that conclusion, as

---

[9] I agree with the majority that *Hayes* "attributed responsibility to the jailers based solely on federal law, not state law." Maj. Op. at 13. And for that reason, the majority's comparative analysis of Arkansas and New Mexico criminal procedure rules is but a distraction. *See id.* at 12–13. True, under New Mexico law, "[w]hen a warrant is issued in a criminal action, . . . the defendant named in the warrant shall, upon arrest, be brought by the [arresting] officer before the court without unnecessary delay." N.M. Stat. Ann. § 31-1-4(C). The majority reads that rule and apparently concludes that, because the arresting officer is vested with statutory responsibility to ensure a prompt hearing, the arresting officer (and, one supposes, that officer's supervisors) is *alone* responsible for ensuring the state court promptly schedules a hearing. But § 31-1-4(C) does not make the arresting officer responsible for protecting a defendant's constitutional rights to the exclusion of anyone else's responsibility. Nor is it clear why the arresting officer would be the proximate cause of an *overdetention* violation, which will not ripen until some indeterminate amount of time has passed and in which, typically, the detainee will no longer be held under the arresting officer's authority. Under the majority's approach, there is no § 1983 remedy to be had, no matter how long an arrestee is unconstitutionally held without an arraignment.

18

the majority rightly notes, we "consider[ed] New Mexico state law insofar as it bears on the scope of [a defendant's] responsibility to ensure a prompt probable cause determination." *Id.* at 854. Likewise, here, we ought to consider New Mexico law insofar as it bears on the scope of Defendants' responsibility to ensure that detainees are not deprived of their right to freedom pending trial. The majority puts it somewhat differently. My colleagues look to New Mexico law only insofar as it bears on the scope of the Defendants' responsibility to ensure a prompt bail hearing. Finding no such requirement in state law, the majority concludes the Defendants did nothing unconstitutional. But ensuring a prompt bail hearing is just one possible means of ensuring that Plaintiffs' constitutional rights are not violated. Other means will also suffice. Most obviously, the Defendants could have simply released Mr. Moya and Mr. Petry from custody.[10] To the extent doing so would have been inconsistent with Defendants' duties under state law, it is no matter, because federal constitutional law trumps. *See* U.S. Const. art. VI, cl. 2.

*Wilson* is not in tension with *Jauch* or *Hayes*. The New Mexico sheriff and warden in *Wilson* could no more force the state court to make a probable cause determination than the sheriffs in Mississippi (*Jauch*) or Arkansas (*Hayes*) could force their state courts to make a bail determination. Any reference in *Wilson* to a duty to "ensure" a state court

---

[10] I recognize that Plaintiffs have expressly disavowed that argument, *see* Maj. Op. at 10–11 (citing Aplt. Br. at 29), but I comment on it anyway to acknowledge the reach of my reasoning. In any case, Plaintiffs identified tactics short of outright release that the defendants in this case could have adopted. *See supra*. In my view they have sufficiently alleged causation at this stage of the proceedings.

proceeding must simply mean that state officials have a duty to seek the state court's cooperation. And should the state court fail to cooperate, it will be left to the sheriff and warden to desist from holding detainees when they lack continued constitutional authority to do so. *See Wilson*, 715 F.3d at 853 n.6 (noting that it is settled law that defendants "who effected the plaintiffs' arrests and detentions[ ] could be held liable *for the plaintiffs' prolonged detentions* without probable cause" (emphasis added)). Again, in my view it is the "prolonged detentions," not the absence of a bail hearing or probable-cause hearing, that is the fundamental due process concern.

The majority's chosen approach, moreover, comes with troubling implications. By (a) looking to state law to determine the scope of state officials' responsibility to ensure prompt bail hearings, and (b) conceptualizing Plaintiffs' liberty interest as an interest in a state court proceeding, rather than in liberty itself, the majority sanctions a system by which states could regularly violate detainees' constitutional rights by holding them indefinitely on account of untimely state courts, without any fear of their collaborating municipalities or state officials ever incurring monetary penalties under § 1983. Such an outcome is not farfetched. We know from *Jauch* that, in at least one part of Mississippi, the only court empowered to set bail would sometimes go months between sessions. And, accepting Plaintiffs' allegations as true, as we must, we can infer that courts in Santa Fe County—New Mexico's third-most populous—routinely fail to schedule arraignments with any earnest.

The majority's causation analysis also lacks a logical endpoint. What if the state court had scheduled Mr. Moya's arraignment a month later than it did? What about a year

later? As I read the majority opinion, even then Mr. Moya would have no actionable § 1983 claim. *See supra*, n.9. To be sure, I agree with the majority that New Mexico sheriffs and wardens are powerless to force New Mexico courts to schedule bail hearings in a timely fashion. Only New Mexico courts can do that. But the solution is not to grant jailers refuge behind judges cloaked with absolute immunity, enabling the jailers to violate the Constitution with impunity.[11] The better solution is to hold state officials and municipalities responsible for the constitutional violations they themselves commit. True, the effect could be that New Mexico sheriffs and wardens respond by releasing pre-trial detainees, some of whom may have been arrested for alleged violent acts or pose a risk of flight, without the deterrence of bail. But it is our role to assure that New Mexico runs its criminal-justice system with the timeliness that the Fourteenth Amendment commands. If it does not, there should be consequences: either pre-trial detainees go free pending trial, or they will be entitled to civil damages against the state's officials and municipalities so that they may be compensated for the violations of their civil rights.

## III.    QUALIFIED IMMUNITY

As the Supreme Court recently reiterated, state officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S.

---

[11] It is no answer to say that Plaintiffs' complaint was deficient for not alleging that they were arrested by officers subject to the defendants' supervisory authority, as the majority opinion could be read to suggest. *See* Maj. Op. at 12 n.8. The arresting officer can no more force the court to act than can the sheriff or warden.

21

658, 664 (2012)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Becker v. Bateman*, 709 F.3d 1019, 1023 (10th Cir. 2013) (quotation omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (internal quotation marks omitted). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In my view, the complaint plausibly alleges that Sheriff Garcia, Warden Caldwell, and Warden Gallegos violated Plaintiffs' constitutional rights. But I recognize that conclusion is not foretold. No opinion from this court or the Supreme Court has ever clearly established that a jailer violates the Constitution by detaining an individual lawfully arrested in anticipation of an untimely scheduled arraignment. That principle of law, to be sure, is clearly established in at least two of our sister circuits, but that is not enough for the law to be clearly established here. I would thus affirm the district court's order insofar as it dismissed Plaintiffs' claims against the sheriff and wardens on the basis of qualified immunity, and so I partially concur in the majority's result. But because municipalities are not entitled to qualified immunity, I would reverse and remand to the district court for further proceedings against the County.

Thus, as to the County, I respectfully dissent.

22